STATE OF NORTH CAROLINA v. DENNIS RAY HAYES AND WINDELL FLOWERS AND CARLTON EUGENE ROBERTS

No. 542A82

(Filed 1 October 1985)

1. **Constitutional Law § 72; Criminal Law § 77.3— sanitized confessions of non-testifying defendants—no implication of specific individuals—Bruton rule not violated**

   Confessions of two non-testifying defendants in which those portions that mentioned accomplices were sanitized by the \substitution of "the other person," "two others" or "they" for specific names did not implicate a specific individual within the meaning of the *Bruton* rule, and the admission of each of those confessions did not deny the other defendants their right of confrontation in a consolidated trial of three defendants for murder, burglary, kidnapping, breaking or entering, larceny and armed robbery, where the evidence of one victim established that three perpetrators were at the crime scene, all three defendants admitted to being at the victims' residence and participating in the robbery, and the discrepancies between the confessions concerned only the identification of the persons who actually assaulted the victims.

2. **Constitutional Law § 72; Criminal Law § 77.3— confession of non-testifying defendant—violation of Bruton rule—harmless error**

   Even if the confession of one non-testifying defendant that he attacked the male victim while the "other two men" assaulted the female victim implicated the other two codefendants within the meaning of the *Bruton* rule in this prosecution for murder, burglary, kidnapping, breaking or entering, larceny and armed robbery, the admission of this confession was harmless error and did not entitle the codefendants to a new trial where all three defendants made extrajudicial statements amounting to interlocking confessions; each defendant admitted having participated in the planning of a burglary and to being present at the victims' home at the time of the burglary; the only discrepancies among the confessions concerned the issue of who actually assaulted the victims; the question of which of the defendants actually committed the assaults was irrelevant to the jury verdicts finding each of the defendants guilty of all of the crimes charged; and the interlocking confessions and evidence that certain items taken from the victims were found in the possession of some of the defendants provided overwhelming evidence of each defendant's guilt as to each charge. Furthermore, any violation of G.S. 15A-927(c)(1) which may have occurred due to the admission of such confession does not entitle the two codefendants to a new trial since there is no possibility that, had the error not been committed, a different result would have been reached at trial.

3. **Criminal Law § 92.1— consolidation of charges against multiple defendants**

   The trial court did not abuse its discretion in granting the State's motion to join various charges against three defendants for trial pursuant to G.S. 15A-926 and in denying defendants' motions for severance under G.S. 15A-927 where the charges against each defendant arose out of a common scheme or

plan entered into by all defendants, the evidence against each would be almost identical, and the admission of the extrajudicial statement of each defendant did not prejudice the other defendants.

**4. Constitutional Law § 63— first degree murder—death qualification of jury**

The practice of "death qualifying" a jury before the guilt-innocence phase of a first degree murder trial did not result in a jury biased in favor of the prosecution on the issue of guilt and deprive defendants of a fair trial.

**5. Criminal Law § 138.18— pecuniary gain aggravating factor—insufficient evidence**

The trial court erred in finding as an aggravating factor for first degree burglary, second degree kidnapping, breaking or entering and larceny that the offenses were "committed for hire or pecuniary gain" where there was no evidence that defendants were paid or hired to commit these crimes.

**6. Criminal Law § 138.40— mitigating circumstance—voluntary acknowledgment of wrongdoing—confession after arrest**

Where the evidence showed that defendant confessed after he was arrested, he was not absolutely entitled to a finding of the mitigating circumstance that he voluntarily acknowledged wrongdoing in connection with the offenses prior to arrest or at an early stage of the criminal process, G.S. 15A-1340.4(a)(2)(l). Instead, it was for the trial judge to decide, in his discretion, whether the confession was made at a sufficiently early stage of the criminal process as to qualify as a mitigating factor, and the trial court's ruling that a defendant who confessed four hours after his arrest was not entitled to this mitigating factor was not an abuse of discretion.

**7. Criminal Law § 138.40— mitigating circumstance—voluntary acknowledgment of wrongdoing—repudiation of confession**

If a defendant repudiates his inculpatory statements, he is not entitled to a finding of the mitigating circumstance that he voluntarily acknowledged wrongdoing in connection with the crimes prior to arrest or at an early stage of the criminal process.

**8. Constitutional Law § 68— no denial of defendant's right to testify**

In the absence of an indication to the trial court that defendant wished to take the stand, it cannot be said that the court denied defendant his constitutional or G.S. 8-54 right to testify.

**9. Criminal Law § 75.2— confession—statement by officer—no reasonable hope of reward**

An officer's statement to defendant that "it could possibly be of some help if he talked" could not have aroused in defendant, a man twenty-eight years old with experience in dealing with law enforcement officials, any reasonable hope of reward if he confessed so as to render his confession involuntary.

**10. Criminal Law § 74.1— motion to suppress portion of confessions—denial as harmless error**

Although the trial court erred in denying defendant's motion to suppress a portion of his confessions in which he referred to an incident that occurred

several hours prior to the crimes in question, the admission of such evidence was harmless beyond a reasonable doubt in light of the overwhelming evidence of defendant's guilt.

Justice BILLINGS did not participate in the consideration or decision of this case.

APPEAL as of right by each defendant pursuant to N.C.G.S. § 7A-27(a) from judgments entered by *Rousseau, J.*, at the 21 June 1982 Special Criminal Session of Superior Court, IREDELL County, the case having been transferred from WILKES County where the incident which is the subject of this case occurred. Each of the defendants was convicted of first-degree murder, first-degree burglary, second-degree kidnapping, breaking or entering, and larceny and armed robbery. Judgment on each defendant's conviction of armed robbery was arrested. Each defendant received the following sentences: For the Class A felony of first-degree murder—life imprisonment; for the Class C felony of first-degree burglary—50 years; for the Class E felony of second-degree kidnapping—30 years to begin upon expiration of the sentence for the Class C felony; and for the Class H felonies of breaking or entering and larceny—10 years to begin at the expiration of the sentence imposed for the Class E felony. We allowed defendants' motion to bypass the North Carolina Court of Appeals on the non-Class A felonies on 22 September 1982 as to defendant Hayes and on 22 November 1982 as to defendants Flowers and Roberts.

*Rufus L. Edmisten, Attorney General, by Charles M. Hensey, Assistant Attorney General, for the State.*

*Adam Stein, Appellate Defender, by Malcolm Ray Hunter, Jr., Assistant Appellate Defender, for defendant-appellant Hayes.*

*Dennis R. Joyce, for defendant-appellant Flowers.*

*Kurt R. Conner, for defendant-appellant Roberts.*

MEYER, Justice.

On Sunday, 13 December 1981, Thomas Greer, age 81, and his wife, Clara Greer, age 76, operated their small country store at Boomer in Wilkes County, North Carolina, as they had done for some 42 years. Mr. and Mrs. Greer lived in a house located behind

and near their store. At approximately 8:30 p.m., they closed the store and went to their house. They went to bed around 9:00 p.m. and shortly thereafter, at approximately 9:15 p.m., someone knocked on the door. Mrs. Greer answered the door and talked to the caller, who was a black man, at the door but refused to let him come in because her husband was asleep and she did not want to awaken him. The man left and Mrs. Greer returned to bed and fell asleep.

Earlier that same evening, at about 6:00 p.m., James Bailey loaned his white 1972 four-door Chevrolet Impala automobile (license number RPW-159) to defendant Dennis Ray Hayes at Hayes' mobile home at the Sturdivant Trailer Park located near Wilkesboro. Hayes took the car to Statesville to pick up the defendant Carlton Eugene Roberts and then returned to the mobile home. Around 9:00 p.m., Hayes and Roberts, together with the defendant Windell Flowers, went to the Greers' store. They then went to the Greer house and knocked on the door but, as indicated, Mrs. Greer would not let them in. The three defendants then went to Lenoir where they obtained a blanket from a friend and then went to a club called the Two Spot where they had some drinks and got into a fight with others over who was to pay for the drinks. The three obtained a sawed-off shotgun and consumed additional liquor.

In the early morning hours of 14 December 1981, at approximately 1:00 a.m., the three defendants returned to the Greer home at Boomer. Hayes wrapped the blanket they had obtained over his head and crashed through a bedroom window. Roberts and Flowers followed through the same window. Roberts grabbed Mr. Greer and started beating him with a stick or pipe, while at the same time demanding that Mr. Greer tell him where the money was hidden. The defendants Flowers and Hayes grabbed Mrs. Greer, put a pistol to her neck, and demanded that she tell where they kept the money. She was also hit over the head with a flashlight, causing a five-inch wound. As one of the three defendants searched the bedroom where the Greers slept, the other two held Mr. and Mrs. Greer. They found a wallet containing between $800.00 and $1,000.00.

Mrs. Greer took Flowers to a back bedroom where she showed him the location of an envelope under a rug. The envelope

contained $1,000.00 in bills and old coins. As the beating of Mr. Greer continued, Mrs. Greer led the two men outside, telling them there might be money hidden in a playhouse in the yard. She attempted to escape and was caught and thrown down. She then took them to the store where they opened the door with a key and went inside. After tying up Mrs. Greer, they stole a number of items from the store, including two cases of cigarettes, a watch with a diamond in it, and a .22 caliber Luger pistol. The three men then left in a four-door white Chevrolet automobile. A white Chevrolet was observed parked on Highway 18 near the Country Squire Trailer Park at the end of a guardrail at about 2:55 a.m. At that time, defendants were gone to get gasoline for the automobile after leaving the Greer residence.

Mrs. Greer struggled out of her bonds and made her way to a nearby mobile home, where her granddaughter, Martha Brown, lived. Martha Brown helped her grandmother into the trailer and then called the sheriff and members of her family. The Greers' son-in-law, Clay Brafford, was the first to arrive at the house. He found Mr. Greer lying on his back with his head at the end of the bed and his hands tied to the foot of the bed. His face was beaten so badly that Brafford could hardly recognize him. There was blood all over the bed and on the bedroom floor, and the room had been ransacked. Mr. Greer was alive but obviously badly hurt. Other people arrived, and Mr. Greer was taken away by ambulance. Mr. Greer subsequently died on 1 January 1982 from severe complications resulting from the severe beating about his face and head which resulted in swelling and bruises about the face, a fractured jaw, and extensive brain damage.

Mrs. Greer was unable to identify any of her assailants and knew only that three black males were involved and that they wore masks and gloves. No fingerprints or footprints were found on the Greer premises.

There was testimony that, on the morning of 14 December 1981, the defendant Hayes returned to his mobile home at about 6:30 a.m. He sat on the bed and cried, saying, "I'll not never [sic] go out on another deal as long as I live. You should have seen what we did to that old man last night." From the butt of a gun, Hayes removed a tie tack and dropped it into a heat duct. Subsequently, this tie tack was found in the mobile home by police.

About a week later, Hayes and his girlfriend, Nancy Cole, and Roberts and his girlfriend, Teresa Smith, met in a room at Motel 21 at Statesville. Roberts said at one point, "This old white man had more money than any black man was ever going to have."

Several days after the incident at the Greers', the defendant Flowers sold old coins, a watch, and a .22 caliber Luger pistol in Taylorsville. As early as 16 December 1982, Hayes and Flowers were questioned in Wilkesboro about the crimes. Flowers was in custody at the time in connection with another matter which occurred in Statesville. He was transferred to Statesville on 3 January 1982, where he gave the first of two statements to Investigating Officer Roberts. Later, after having been brought back to Wilkes County, he gave a second statement to Investigating Officer Cabe.

On 3 January 1982, the defendant Hayes was arrested by Sheriff Gentry in Alexander County and, after having been brought back to Wilkes County, gave a statement to the sheriff at about 11:00 a.m. On 20 April 1982, defendant Carlton Roberts told his cellmate, Grover Bauguess, about what happened at the Greer house back in December, including the fact that he was the person who had beaten Mr. Greer.

Certain of defendants' assignments of error and arguments thereon are common to all three defendants. Others relate only to defendants Hayes and Flowers, and still others relate only to either Flowers or Hayes individually. We will address the assignments, contentions, and arguments of the defendants accordingly.

## ALL DEFENDANTS

Each of the three defendants challenged the consolidation of their cases for trial and the admission into evidence of extrajudicial statements of each defendant which referred to the other defendants, determination of their guilt by a so-called "death-qualified" jury, and the use of the aggravating factor that "the offenses were committed for hire or pecuniary gain" in enhancing their sentences for first-degree burglary, second-degree kidnapping, and breaking or entering and larceny.

Prior to trial, each defendant filed a written motion to sever his trial from that of his codefendants. These motions were heard by the trial judge on 6 May 1982, but a ruling was deferred. Im-

mediately prior to trial on 21 June 1982, the prosecutor moved to join all three defendants' cases in one trial on grounds specified in N.C.G.S. § 15A-926. Over all defendants' objections, this motion was allowed.

We address first the consolidation of the defendants' cases for trial and the admission into evidence of extrajudicial statements of each defendant. Prior to trial the prosecution was granted a motion to join the three defendants' cases for trial. The motion was granted upon the grounds specified in N.C.G.S. § 15A-926, to wit: that the cases were based on identical charges, they arose out of the same series of transactions, and the evidence was the same.

The defendants, in their challenge to the consolidation, contend that the trial court erred in admitting into evidence expurgated extrajudicial statements which implicated the other codefendants. All three defendants made extrajudicial statements amounting to interlocking confessions which were subsequently admitted into evidence. Each defendant's statement admitted participation in the crimes with other persons. The only real conflict in their statements was as to which of the defendants beat Mr. and Mrs. Greer. Each defendant's statement or statements that mentioned accomplices was sanitized either prior to or during the course of the trial by inserting in the place of the names mentioned "the other person," "two others," "others," or "they," so as not to implicate specific individuals.

Defendant Flowers made two statements. His first statement was made in the Iredell County Sheriff's Office at approximately 3:07 a.m. on 3 January 1982. His second statement was made the same day at approximately 5:29 a.m. at the Wilkes County Sheriff's Office. Before allowing these to be read into evidence, the trial judge instructed the jury that the statements could be considered only against Flowers and nobody else. Both of these statements referred to two other people who were with him during the time the crimes were being perpetrated.

Defendant Hayes made a statement to the Sheriff of Wilkes County at 11:00 a.m. on 3 January 1982 in which he admitted that he was the one who crashed through the window into the Greer residence but in which he denied touching either Mr. or Mrs. Greer. In his statement, he said that he was in the company of

two others. The trial judge carefully limited the statement to Hayes and instructed the jury not to consider it as to the other two defendants.

Defendant Roberts made a statement to his cellmate while he was confined in the Wilkes County Jail awaiting trial on or about 20 April 1982. He told his cellmate, Grover Bauguess, that he beat Mr. Greer while the other two beat Mrs. Greer to make her tell where the money was hidden. The trial judge carefully instructed the jury that this statement was limited to Roberts only.

Nancy Cole, Hayes' girlfriend, testified as to a conversation between Hayes, Roberts, Roberts' girlfriend, and herself to the effect that Roberts was the one who beat Mr. Greer.

There was also independent evidence that certain items from the Greer home and store were found in the possession of the defendants.

In his final instructions, the trial judge again instructed that the statements were limited to the defendant who made them and that they were not to be used against codefendants.

None of the defendants testified.

All three defendants argue strenuously that the consolidation of their cases for trial and the subsequent admission into evidence of their extrajudicial statements violates the holding in *State v. Woods*, 311 N.C. 80, 316 S.E. 2d 229 (1984). The defendants generally contend that they were denied their sixth amendment right to confront and cross-examine the witnesses against them by the admission of the statements of non-testifying codefendants in the consolidated trial. More specifically, they argue that the admission of these statements into evidence runs afoul of the holding in *Bruton v. United States*, 391 U.S. 123, 20 L.Ed. 2d 476 (1968).

In *Paoli v. United States*, 352 U.S. 232, 1 L.Ed. 2d 278 (1957), the United States Supreme Court said that a confession made by a defendant was not admissible against codefendants. The Court went on to hold that a confession implicating codefendants could be admitted against the confessor in a joint trial if the trial court clearly instructs the jury that the statement may not be considered against the codefendants. In *Bruton*, the Court held that

the admission of a non-testifying codefendant's confession implicating a defendant violates his constitutional right of confrontation. The Supreme Court went on to reject *Paoli*'s holding that encroachment upon this right could be avoided simply by an instruction to the jury to disregard the confession as to the confessor's codefendants.

In *State v. Fox*, 274 N.C. 277, 163 S.E. 2d 492 (1968), we noted that the Sixth Amendment's confrontation clause had been made applicable to the states through the fourteenth amendment in *Pointer v. Texas*, 380 U.S. 400, 13 L.Ed. 2d 923 (1965), and therefore recognized that *Bruton* was binding on this Court. We went on to hold in *Fox* that, in joint trials, extrajudicial confessions must be excluded unless all portions which implicate the confessor's codefendants can be deleted from the statement without prejudice to either the State or to the confessor. If the confession cannot be "sanitized," the State must choose between relinquishing the confession or trying the defendants separately. The *Fox* holding was subsequently codified by the legislature as N.C.G.S. § 15A-927(c)(1), which provides:

> When a defendant objects to joinder of charges against two or more defendants for trial because an out-of-court statement of a codefendant makes reference to him but is not admissible against him, the court must require the prosecutor to select one of the following courses:
>
> a. A joint trial at which the statement is not admitted into evidence; or
>
> b. A joint trial at which the statement is admitted into evidence only after all references to the moving defendant have been effectively deleted so that the statement will not prejudice him; or
>
> c. A separate trial of the objecting defendant.

[1] All three defendants earnestly contend that the confessions of their codefendants implicated them in the crimes. As noted previously, those portions of the confessions that mentioned accomplices were sanitized by the substitution of the words "the other person," "two others," "others," or "they" for specific names. However, the defendants point out that, in *State v. Woods*, 311 N.C. 80, 316 S.E. 2d 229 (1984), we held that a defend-

ant's name need not be mentioned in the confession in order to implicate him. In *Woods*, three defendants were tried jointly for the armed robbery of a service station. The extrajudicial statement of one of the defendants was admitted into evidence and provided in pertinent part, "I told him I was with some guys, but that I didn't rob anyone, they did." *Id.* at 94, 316 S.E. 2d at 237. We held that, because the confessor's two codefendants were being tried jointly with him, and since only two persons were seen in the service station at the time of the robbery, the statement clearly implicated the appellant Woods. The defendants argue that *Woods* is controlling here.

With regard to the confessions of Flowers and Hayes, it is clear that *Woods* is not controlling. In *Woods*, there were three defendants, but only two persons were seen in the service station at the time of the robbery. The confessor placed the other two defendants at the scene of the robbery. Here, however, the testimony of Mrs. Greer established that three perpetrators were at the scene, and all three defendants admit to being at the Greer residence and participating in the robbery. The discrepancies between the confessions of Flowers and Hayes concern the identification of the persons who actually assaulted the Greers. According to Flowers' confessions, "one of the two people that had already been in" assaulted Mr. Greer while Mrs. Greer was beaten by "one of the other people that was with him." Hayes' confession states that "one man with a stick got to the bed and started beating Mr. Greer" and that "he and one man began to search the house for money." In light of the fact that all three perpetrators were at the scene of the crime, we find these vague and ambiguous references to be incapable of implicating a specific individual.

[2] However, Roberts, in his confession, stated that he attacked Mr. Greer while the "other two men" assaulted Mrs. Greer. It could be argued that, under *Woods*, this implicated Flowers and Hayes. Also, Roberts' confession included the statement that "the third man drove the car that belonged to Dennis Hayes." Assuming, *arguendo*, that this statement did implicate Roberts' codefendants, we hold that this does not entitle them to a new trial.

A *Bruton* violation does not automatically require reversal of an otherwise valid conviction. On at least three occasions, the

United States Supreme Court has applied a harmless error analysis to claimed *Bruton* violations. *Brown v. United States*, 411 U.S. 223, 36 L.Ed. 2d 208 (1973); *Schneble v. Florida*, 405 U.S. 427, 31 L.Ed. 2d 340 (1972); *Harrington v. California*, 395 U.S. 250, 23 L.Ed. 2d 284 (1969). In their confessions, each defendant admitted having participated in the planning of the burglary and to being present at the Greer home at the time of burglary. The only discrepancies among the confessions revolved around the issue of who actually assaulted the Greers. However, it is well established that where two or more persons join together to commit a crime, each of them, if actually or constructively present, is guilty of the particular crime and any other crime committed by the other or others in furtherance of or as a natural consequence of the common purpose. *State v. Oliver*, 302 N.C. 28, 274 S.E. 2d 183 (1981); *State v. Westbrook*, 279 N.C. 18, 181 S.E. 2d 572 (1971), *death sentence vacated*, 408 U.S. 939, 33 L.Ed. 2d 761 (1972). The assaults on the Greers and the subsequent death of Mr. Greer as a result of the beating inflicted upon him were clearly in furtherance of or a natural consequence of the burglary committed by all three defendants. The question of which of the defendants actually committed the assaults was irrelevant to the jury verdicts finding each of the defendants guilty of all of the crimes charged. The interlocking confessions combined with the fact that certain items taken from the Greers were found in the possession of some of the defendants provided overwhelming evidence of each defendant's guilt as to each charge and any *Bruton* error which *may* have occurred was harmless beyond a reasonable doubt. *See* N.C.G.S. § 15A-1443(b).

We further hold that any violation of N.C.G.S. § 15A-927(c)(1) which *may* have occurred due to the admission of Roberts' confession does not entitle Flowers and Hayes to a new trial. Under N.C.G.S. § 15A-1443(a), a defendant is prejudiced by errors relating to rights arising other than under the constitution when there is a reasonable possibility that, had the error not occurred, a different result would have been reached at trial. Applying this standard, we hold that there is no possibility that, had the error not been committed, a different result would have been reached at the trial, and thus any violation of N.C.G.S. § 15A-927(c)(1) that may have occurred as a result of the admission of Roberts' confession was not prejudicial as to Flowers or Hayes.

[3] In light of this analysis, we conclude that the trial court did not err in granting the State's motion to join the cases for trial pursuant to N.C.G.S. § 15A-926 and in denying the defendants' motions for severance under N.C.G.S. § 15A-927. It is well established that a trial court's ruling on the consolidation or severance of cases is discretionary and will not be disturbed absent a showing of abuse of discretion. *E.g., State v. Lake*, 305 N.C. 143, 286 S.E. 2d 541 (1982); *State v. Silva*, 304 N.C. 122, 282 S.E. 2d 449 (1981). A trial court may be reversed for an abuse of discretion only upon a showing that its ruling was so arbitrary that it could not have been the result of a reasoned decision. *State v. Wilson*, 313 N.C. 516, 330 S.E. 2d 450 (1985). In light of the fact that the charges against each defendant arose out of a common scheme or plan entered into by the defendants and the evidence against each would be almost identical, we are unable to say that the trial judge abused his discretion by joining the defendants' cases for trial.

[4] The defendants next contend that the practice of "death-qualifying" the jury before the guilt-innocence phase of the trial resulted in a jury biased in favor of the prosecution on the issue of guilt and deprived them of a fair trial. We have repeatedly upheld North Carolina's jury selection process in first-degree murder cases as constitutional. *E.g., State v. Vereen*, 312 N.C. 499, 324 S.E. 2d 250, *cert. denied*, --- U.S. ---, 85 L.Ed. 2d 526 (1985); *State v. Noland*, 312 N.C. 1, 320 S.E. 2d 642 (1984), *cert. denied*, --- U.S. ---, 84 L.Ed. 2d 369, *reh'g denied*, --- U.S. ---, 85 L.Ed. 2d 342 (1985). This assignment of error is overruled.

[5] The defendants' next argument concerns the sentences which were imposed by the trial judge for their convictions for first-degree burglary, second-degree kidnapping, breaking or entering, and larceny. On the first-degree burglary convictions, each defendant was sentenced to the maximum term of 50 years. On the second-degree kidnapping convictions, each received the maximum sentence of 30 years. On the breaking or entering and larceny convictions, each defendant was sentenced to the maximum term of 10 years. In support of these sentences, the court made separate findings of aggravating and mitigating factors for each judgment. The trial court found as an aggravating factor for each crime as to each defendant that the offenses were "committed for hire or pecuniary gain." The defendants argue that this finding

in aggravation was error in each case and that they are entitled to new sentencing hearings on these convictions. We agree.

Subsequent to the trial of these defendants, we held in *State v. Abdullah*, 309 N.C. 63, 306 S.E. 2d 100 (1983), that under the Fair Sentencing Act there must be evidence that the defendant was paid or hired to commit the offense before this aggravating factor may be found. The State concedes that there was no evidence that the defendants were paid or hired to commit these crimes. When the trial judge errs in finding an aggravating factor and imposes a sentence in excess of the presumptive term, the case must be remanded for a new sentencing hearing. *State v. Ahearn*, 307 N.C. 584, 300 S.E. 2d 689 (1983). The terms imposed for each offense exceeded the presumptive terms set out in N.C.G.S. § 15A-1340.4(f). Therefore, each defendant is entitled to a new sentencing hearing on his convictions for first-degree burglary, second-degree kidnapping, breaking or entering, and larceny.

### DEFENDANTS HAYES AND FLOWERS

**[6]** Defendants Hayes and Flowers assign as error the trial court's failure to find as a mitigating factor for the sentences imposed on the first-degree burglary, second-degree kidnapping, breaking or entering, and larceny convictions that prior to arrest or at an early stage of the criminal process, they voluntarily acknowledged wrongdoing in connection with the offenses to law enforcement officials. We conclude that the trial court did not err in refusing to find this mitigating factor as to either defendant.

Under the Fair Sentencing Act, the trial court must consider every statutory mitigating factor prior to imposing a sentence in excess of the presumptive term. N.C.G.S. § 15A-1340.4(a). N.C.G.S. § 15A-1340.4(a)(2)(1) lists as a mitigating factor that "[p]rior to arrest or at an early stage of the criminal process, the defendant voluntarily acknowledged wrongdoing in connection with the offense to a law enforcement officer." In *State v. Graham*, 309 N.C. 587, 308 S.E. 2d 311 (1983), we said that with regard to this mitigating factor, "criminal process" begins either upon the issuance of a warrant or information, upon the return of a true bill of indictment or presentment, or upon arrest. We went on to hold that a defendant was *entitled* to a finding of this statutory mitigating factor if his confession was made prior to the issuance

of a warrant or information, the return of a true bill of indictment or presentment, or prior to arrest, *whichever comes first.*

The evidence shows that Hayes made his confession *after* he was arrested. He, therefore, was not absolutely *entitled* to a finding of this mitigating circumstance. Instead, it was for the trial judge to decide, in his discretion, whether the statement was made at a sufficiently early stage of the criminal process as to qualify as a mitigating factor. *See id.* A matter committed to the discretion of a trial court is not subject to review except upon a showing of an abuse of discretion. *Highway Commission v. Hemphill,* 269 N.C. 535, 153 S.E. 2d 22 (1967). As noted previously, a trial court may be reversed for an abuse of discretion only upon a showing that its ruling was so arbitrary that it could not have been the result of a reasoned decision. *State v. Wilson,* 313 N.C. 516, 330 S.E. 2d 450 (1985). The record indicates that Hayes confessed approximately four hours after he was arrested. We cannot say in this case that the trial court's ruling that the defendant was not entitled to this mitigating factor was so arbitrary that it could not have been the result of a reasoned decision. Although we decline to establish a *per se* rule establishing a specific length of time beyond which a confession cannot be considered as being made at an early stage of the criminal process, we hold that in this case the defendant has failed to show an abuse of discretion.

[7] In regard to defendant Flowers, the record indicates that he had been incarcerated in the Iredell County jail on an unrelated charge since 30 December 1981. After first denying any involvement in the crimes, the defendant made an inculpatory statement during the early morning hours of 3 January 1982. He was then arrested in connection with these crimes. A few hours later, Flowers gave another statement admitting his involvement in the offenses. Flowers' first inculpatory statement was, therefore, clearly made at an early stage of the criminal process. However, Flowers repudiated the first statement prior to the second, and later repudiated the second confession as well.

The mitigating factor set out in N.C.G.S. § 15A-1340.4(a)(2)(1) reflects the assumption that a person who admits guilt and acknowledges a responsibility for his actions shows a possibility of rehabilitation which should be rewarded. *See Graham.* However, when a defendant later retracts an inculpatory statement, this

assumption of the potential for rehabilitation disappears, and it is as though no inculpatory statement was ever made. We hold that if a defendant repudiates his inculpatory statement, he is not entitled to a finding of this mitigating circumstance. Here, the record indicates that Flowers repudiated *both* of the inculpatory statements attributed to him. Therefore, the trial court did not commit error in refusing to find as a mitigating factor that prior to arrest or at an early stage of the criminal process, he voluntarily acknowledged wrongdoing in connection with the crimes.

## DEFENDANT HAYES

[8] Defendant Hayes argues that the trial court committed prejudicial error by denying him his right to testify in his own defense. Under N.C.G.S. § 8-54, a criminal defendant is, at his own request, a competent witness in the proceeding against him. The defendant also contends that he has a constitutional right to testify on his own behalf.[1] Assuming, *arguendo*, that a constitutional right to testify does exist, we conclude that neither it nor N.C.G.S. § 8-54 has been violated. The record clearly indicates that the defendant, despite several opportunities to do so, did not express to the trial court a desire to testify. In the absence of an

---

1. Although it appears the United States Supreme Court has never explicitly held that a criminal defendant has a constitutional right to testify on his own behalf, it has in several cases intimated that such a right exists. *E.g., Wainwright v. Sykes*, 433 U.S. 72, 93 n.1, 53 L.Ed. 2d 594, 612, *reh'g denied*, 434 U.S. 880, 54 L.Ed. 2d 163 (1977) (Burger, C.J., concurring) ("Only such basic decisions as whether to plead guilty, waive a jury, or testify in one's own behalf are ultimately for the accused to make."); *Faretta v. California*, 422 U.S. 806, 819 n.15, 45 L.Ed. 2d 562, 572 (1975) ("It is now accepted, for example, that an accused has a right to . . . testify on his own behalf . . . ."); *Brooks v. Tennessee*, 406 U.S. 605, 612, 32 L.Ed. 2d 358, 364 (1972) ("Whether the defendant is to testify is an important tactical decision as well as a matter of constitutional right."); *Harris v. New York*, 401 U.S. 222, 225, 28 L.Ed. 2d 1, 4 (1971) ("Every criminal defendant is privileged to testify in his own defense, or to refuse to do so."). A number of other courts, however, have expressly held that a criminal defendant does possess a constitutional right to testify on his own behalf. *E.g., Whiteside v. Scurr*, 744 F. 2d 1323 (8th Cir. 1984), *rev'd on other grounds*, 475 U.S. ---, 89 L.Ed. 2d 123 (1986); *United States v. Bifield*, 702 F. 2d 342 (2d Cir.), *cert. denied*, 461 U.S. 931, 77 L.Ed. 2d 304 (1983); *Alicea v. Gagnon*, 675 F. 2d 913 (7th Cir. 1982); *State v. Superior Court County of Pima*, 142 Ariz. 375, 690 P. 2d 94 (1984); *People v. Curtis*, 681 P. 2d 504 (Colo. 1984); *People v. Simmons*, 140 Mich. App. 681, 364 N.W. 2d 783 (1985). The majority of the courts recognizing a constitutional right to testify have concluded that it emanates from the due process clauses of the fifth and fourteenth amendments and from the sixth amendment's guarantees of the right to confrontation and compulsory process.

indication to the trial court that he wished to take the stand, it cannot be said that the court denied the defendant his right to testify. This assignment of error is without merit and is overruled.

### DEFENDANT FLOWERS

[9] Defendant Flowers argues that the trial court erred in denying his motions to suppress the inculpatory statements he made to the authorities. Flowers contends that the statements should be held to be involuntary due to inducements and promises made to him by Captain Roberts of the Wilkes County Sheriff's Department.

At the suppression hearing, Captain Roberts testified that he questioned Flowers during the early morning hours of 3 January 1982. Prior to the interview, the defendant was informed of his *Miranda* rights. Roberts testified that he told the defendant that the authorities had information that he was involved with the crimes which occurred at the Greer residence. Roberts acknowledged that he had told Flowers that if he cooperated, "it could possibly be helpful to him." However, Roberts testified that he told the defendant that he could not make any promises and, in response to defendant's inquiry, specifically told him that he did not have the authority to promise that any sentence he might receive would be served concurrently with any other sentence.

The defendant testified at the suppression hearing that Roberts told him that he knew that he was going to have to return to prison due to a parole violation and that if he confessed he would try to see that any sentence imposed was made to run concurrent with any other sentence he was required to serve. The trial court made findings of fact based on the evidence presented at the suppression hearing. Among these findings were:

> [T]hat Captain Roberts, in talking with the defendant concerning the fact that the defendant was already serving a prison sentence and was wanting some help, Captain Roberts stated that it could possibly be of some help if he talked, but that he—that is Captain Roberts—could not make any promises and did not make any promises.

Based upon this and other findings of fact, the court concluded that the confession was voluntarily made, "without threats or

promises or hope of reward." Flowers argues that the evidence at the motion hearing establishes that the confession was induced by assurances from law enforcement officials that they would assist him in connection with the offenses. We disagree.

Findings of fact made by a trial court are conclusive and binding upon appellate courts if supported by competent evidence in the record. *State v. Curry*, 288 N.C. 660, 220 S.E. 2d 545 (1975); *State v. Pruitt*, 286 N.C. 442, 212 S.E. 2d 92 (1975). The trial court's conclusions of law, however, are reviewable on appeal. *State v. Corley*, 310 N.C. 40, 311 S.E. 2d 540 (1984); *State v. Bishop*, 272 N.C. 283, 158 S.E. 2d 511 (1968).

It is well established that a confession obtained as a result of an inducement of hope promising relief from the criminal charge to which the confession relates is involuntary and inadmissible. *E.g., State v. Jackson*, 308 N.C. 549, 304 S.E. 2d 134 (1983); *State v. Pruitt*, 286 N.C. 442, 212 S.E. 2d 92 (1975). However, here, the trial court found that Roberts told the defendant that he could not make any promises and, in fact, made no promises concerning relief as to these or any other charges. This finding was amply supported by the evidence and is conclusive on appeal. The only evidence that could possibly support the defendant's argument is the court's finding that Roberts stated that "it could possibly be of some help if he talked." We conclude, however, that this statement by Captain Roberts could not have aroused in the defendant, a man 28 years old with experience in dealing with law enforcement officials, any reasonable hope of reward if he confessed to the crimes. *See State v. Branch*, 306 N.C. 101, 291 S.E. 2d 653 (1982). This assignment of error is overruled.

[10]   The defendant also contends thàt the trial court erred in denying his motion to suppress a portion of his confessions in which he refers to an incident that occurred several hours prior to the events at the Greer residence. In the confessions, the defendant stated that, while at a nightclub, two men started fighting and knocked over his drink. Flowers said that he confronted the two men and told them that if they did not pay for his drink, he would kill them. We agree with the defendant that this portion of the confession was irrelevant to any of the charges for which he was being tried and should have been excluded. However, in light of the overwhelming evidence of the defendant's guilt, its admission was harmless beyond a reasonable doubt.

For the foregoing reasons, we reach the following results in the cases against the defendants:

No. 82CRS6057, No. 82CRS6056, and No. 82CRS6066—First-Degree Murder (All Defendants)—No error.

No. 82CRS6058, No. 82CRS6052, and No. 82CRS6064—First-Degree Burglary (All Defendants)—Sentences vacated and remanded for resentencing.

No. 82CRS6059, No. 82CRS6055, and No. 82CRS6063—Second-Degree Kidnapping (All Defendants)—Sentences vacated and remanded for resentencing.

No. 82CRS6061, No. 82CRS6053, and No. 82CRS6067—Breaking or Entering and Larceny (All Defendants)—Sentences vacated and remanded for resentencing.

Justice BILLINGS did not participate in the consideration or decision of this case.