STATE OF NORTH CAROLINA
v.
MARVIN COVINGTON.
No. COA06-1575
Court of Appeals of North Carolina.
Filed October 2, 2007
This case not for publication
Attorney General Roy Cooper, by Assistant Attorney General Chris Z. Sinha, for the State.
Geoffrey W. Hosford for Defendant.
STEPHENS, Judge.
In August 2003, Defendant twice kidnapped his former girlfriend, "Julie,"[1] raping her during the second kidnapping. After a trial by jury, Defendant was convicted of two counts of first-degree kidnapping, first-degree rape, robbery with a dangerous weapon, and multiple misdemeanors stemming from the abductions. The jury also found that Defendant had obtained the status of a violent habitual felon. Defendant was sentenced to life imprisonment without parole. Defendant appeals.
The State's evidence at trial tended to show that Defendant and Julie began dating in 2001 and that in 2002 Defendant moved into Julie's apartment in Charlotte where she lived with her son . After the relationship deteriorated, Julie asked Defendant to move out of the apartment. Defendant refused, Julie and her son thus moved out in July 2003, and Julie obtained a domestic violence protective order against Defendant in early August 2003 .
While at work on 15 August 2003, Julie called her son at their new apartment and told him she would be returning home to have lunch with him. As they were eating lunch, Defendant emerged from the apartment's laundry room carrying a knife and threatening Julie and her son. Defendant told the son that he would not hurt Julie if the son did not call the police. Defendant forced Julie out of the apartment with the knife and told Julie "not to try anything[.]" Defendant made Julie drive him away from her apartment in her car, but at some point thereafter Defendant and Julie switched positions in the car so that Defendant was driving. Defendant drove the car to a wooded area outside of Concord, north of Charlotte. Defendant told Julie that "he was going to kill [her][.]" Defendant made Julie take off her clothes, grabbed her wrist, and began leading her away from the car into the woods. When Defendant let go of her wrist, Julie ran back to the car, grabbed the keys off the car's trunk, and escaped. Julie contacted the police and returned to Charlotte . She did not see Defendant again until 28 August 2003 .
On 28 August 2003, Defendant approached Julie while she was working, placed his arm around her neck, and said, "Let's go." Defendant told Julie he had a knife. He forced Julie into her car and drove the car to the end of a dead-end road in Charlotte. Defendant brandished the knife and told Julie to remove her clothes and to get in the backseat . Defendant raped Julie in the backseat . Afterwards, Defendant drove the car to another location, took money from Julie's purse, and told Julie she could leave.
Defendant was arrested on 29 August 2003 . On 22 September 2003, Defendant was indicted on multiple charges arising out of the kidnappings . On 13 March 2006, Defendant was indicted for being a violent habitual felon . Defendant was tried between 24 April and 27 April 2006, thirty-one months after being indicted in 2003.
Defendant first argues that the trial court erred by denying his pro se motion in which he asserted a violation of his right to a speedy trial as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 18, of the North Carolina Constitution. In response, the State contends that Defendant was not entitled to a hearing on his pro se motion because, at the time the motion was filed, Defendant was represented by appointed counsel. See State v. Grooms, 353 N.C. 50, 61, 540 S.E.2d 713, 721 (2000) ("Having elected for representation by appointed defense counsel, defendant cannot also file motions on his own behalf or attempt to represent himself. Defendant has no right to appear both by himself and by counsel."), cert. denied, 534 U.S. 838, 151 L. Ed. 2d 54 (2001). It appears from our review of the record that Defendant was represented by counsel at the time he filed his pro se motion; consequently, Defendant never properly raised his constitutional issue in the trial court and has therefore waived appellate review of this issue. Grooms, 353 N.C. 50, 540 S.E.2d 713.
Assuming arguendo that the speedy trial issue was properly raised in the court below, Defendant's right to a speedy trial was not violated.
The United States Supreme Court has identified four factors "which courts should assess in determining whether a particular defendant has been deprived of his right" to a speedy trial under the federal constitution. Barker v. Wingo, 407 U.S. 514, 530, 33 L. Ed. 2d 101, 117 (1972). These factors are: "(1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of [the] right to a speedy trial, and (4) prejudice resulting from the delay." State v. Willis, 332 N.C. 151, 164, 420 S.E.2d 158, 163 (1992). We follow the same analysis in reviewing speedy trial claims under Article I, Section 18 of the North Carolina Constitution. See State v. Jones, 310 N.C. 716, 314 S.E.2d 529 (1984) and State v. Avery, 95 N.C. App. 572, 383 S.E.2d 224 (1989), disc. rev. denied, 326 N.C. 51, 389 S.E.2d 96 (1990).
State v. Webster, 337 N.C. 674, 678, 447 S.E.2d 349, 351 (1994).
First, "[t]he length of the delay is not per se determinative of whether a speedy trial violation has occurred." Id. (citing State v. Pippin, 72 N.C. App. 387, 392, 324 S.E.2d 900, 904, disc. review denied, 313 N.C. 609, 330 S.E.2d 615 (1985)). The length of the delay in this case, "[w]hile not enough in itself to conclude that a constitutional speedy trial violation has occurred, . . . is clearly enough to cause concern and to trigger examination of the other [Barker] factors." Id. at 679, 447 S.E.2d at 351 (citing State v. McKoy, 294 N.C. 134, 141, 240 S.E.2d 383, 388 (1978)); see also Grooms, 353 N.C. 50, 540 S.E.2d 713 (holding that delay of three years and 326 days from indictment to trial triggered examination of other Barker factors).
Second, "defendant has the burden of showing that the delay was caused by the neglect or willfulness of the prosecution." Grooms, 353 N.C. at 62, 540 S.E.2d at 721. The record on appeal does not clearly establish the reason for the delay. In his pro se motion, Defendant contends that the delays were due to the assignment of four different assistant district attorneys to his case in a "deliberate attempt to delay the trial[.]" Nothing in the record supports Defendant's assertion. The record contains only two documents filed in the case between the date of Defendant's arraignment and the trial: Defendant's pro se motion and a motion in limine filed the day the trial began. From our review of the transcript, we are able to determine only that the matter was continued once in 2006 at the request of defense counsel due to his wife's illness . In sum, Defendant has not met his burden of showing that the delay was caused by the neglect or willfulness of the State.
Third, as stated above, defense counsel never filed any motions asserting Defendant's right to a speedy trial. While the failure to assert the speedy trial claim does not foreclose the claim, it "does weigh against [Defendant's] contention that he has been denied his constitutional right to a speedy trial." Id. at 63, 540 S.E.2d at 722 (citing Webster, 337 N.C. at 680, 447 S.E.2d at 352).
Fourth, in considering whether Defendant has been prejudiced by a delay between indictment and trial, our Supreme Court has noted that a speedy trial serves
"(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system."
Webster, 337 N.C. at 681, 447 S.E.2d at 352 (quoting Barker, 407 U.S. at 532, 33 L. Ed. 2d at 118). Regarding this factor, Defendant argued in his pro se motion that "[t]he unreasonable delays have given [Julie] opportunity to change and tailor her story." We note, however, that Julie's testimony at trial was substantially similar to the statements she gave to the police immediately after the kidnappings.
Upon balancing the Barker factors, we hold that Defendant's constitutional right to a speedy trial was not violated. Defendant's argument is overruled.
Defendant next argues that the trial court erred in (1) denying his pre-trial motion in limine and (2) permitting Julie "to testify about statements purportedly made to her by [Defendant]." We disagree.
In his motion in limine, Defendant asked the trial court to suppress statements Julie gave to police officers after the kidnappings . At a hearing on the motion, the trial court ordered portions of the statements redacted, but ruled that the statements as modified could be admitted into evidence . At trial, Defendant did not object to the admission of the statements . "Our Supreme Court has consistently held that `[a] motion in limine is insufficient to preserve for appeal the question of the admissibility of evidence if the defendant fails to further object to that evidence at the time it is offered at trial.'" State v. Tutt, 171 N.C. App. 518, 520, 615 S.E.2d 688, 690 (2005) (quoting State v. Hayes, 350 N.C. 79, 80, 511 S.E.2d 302, 303 (1999) (per curiam)); see also State v. Oglesby, ___ N.C. ___, 648 S.E.2d 819 (2007) (discussing this Court's decision in Tutt); N.C. R. App. P. 10(b)(1). Defendant's argument that the statements were erroneously admitted is without merit.
Defendant's additional contention that the trial court erred in allowing Julie to testify as to certain statements allegedly made by Defendant is similarly without merit. Specifically, Defendant argues that the trial court erred in allowing Julie to testify that (1) during the 15 August 2003 kidnapping, Defendant "told me to call [my son] and tell him that I had dropped [Defendant] off downtown at the bail bondsman's office[,]" and (2) during the 28 August 2003 kidnapping, "[Defendant] had told meverbally that he had killed before." At trial, however, Defendant offered no objection to Julie's testimony concerning the bail bondsman, and thus Defendant's argument to this Court is misplaced . See N.C. R. App. P. 10(b)(1) ("In order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make[.]").
On the other hand, Defendant's objection to Julie's testimony concerning Defendant's statement about prior killings properly preserved that issue for our review. "The standard of review for this Court assessing evidentiary rulings is abuse of discretion." State v. Boston, 165 N.C. App. 214, 218, 598 S.E.2d 163, 166 (2004) (citing State v. Meekins, 326 N.C. 689, 696, 392 S.E.2d 346, 350 (1990)). "A trial court may be reversed for an abuse of discretion only upon a showing that its ruling was so arbitrary that it could not have been the result of a reasoned decision." State v. Hayes, 314 N.C. 460, 471, 334 S.E.2d 741, 747 (1985) (citing State v. Wilson, 313 N.C. 516, 330 S.E.2d 450 (1985)).
One of the misdemeanors for which Defendant was indicted was communicating threats in violation of N.C. Gen. Stat. § 14-277.1(a) (2003). The essential elements of this offense are:
(1) A willful threat to physically injure another person . . .;
(2) The threat is communicated to the other person orally, in writing, or by any other means;
(3) The threat is made in a manner and under circumstances which would cause a reasonable person to believe that the threat is likely to be carried out; and (4) The person being threatened believes that the threat will be carried out.
Id. Immediately after Defendant's objection to Julie's testimony about Defendant's prior killings, the trial court instructed the jury that the statement was being allowed "to show her state of mind that she may have been frightened by [Defendant], not to believe that [Defendant] committed some other crime." That Julie may have been frightened goes to the fourth element of the offense. Accordingly, we discern no abuse of discretion in the trial court's ruling. Defendant's argument is overruled.
By his final argument, Defendant asserts that the trial court erred in denying his motion to dismiss the violent habitual felon indictment because the predicate felonies were not Class A through E felonies at the time Defendant was convicted of the predicate offenses. See N.C. Gen. Stat. § 14-7.7(b) (2005) (stating that for purposes of the violent habitual felon statute, "violent felony" includes "[a]ll Class A through E felonies"). The predicate offenses for which Defendant achieved violent habitual felon status were Class H felonies at the time of his convictions for those crimes but, at the time of his conviction in the present case, had been reclassified by the Legislature as "Class A through E felonies." Defendant concedes "that prior convictions . . . that did not qualify as predicate felonies for violent habitual felon status at the time of conviction but that do at present may be used to achieve violent habitual felon status." See, e.g., State v. Wolfe, 157 N.C. App. 22, 37, 577 S.E.2d 655, 665 (holding that offenses which have been "upgraded" by the General Assembly may be used to achieve violent habitual felon status), appeal dismissed and disc. review denied, 357 N.C. 255, 583 S.E.2d 289 (2003). Defendant's argument is without merit, and we decline his request to reconsider and reverse the holding in Wolfe. See In re Civil Penalty, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989) ("Where a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court."). In Defendant's trial, we find
NO ERROR.
Judges McGEE and SMITH concur.
Report per Rule 30(e).
NOTES
[1] We use the pseudonym, "Julie," to protect the former girlfriend's privacy.