IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-766

Filed 1 April 2026

Mecklenburg County, Nos. 20CR233292-590, 22CR008623-590

STATE OF NORTH CAROLINA

v.

LYNWOOD GERARD WILLIAMS, Defendant.

Appeal by Defendant from judgment entered 14 February 2024 by Judge Clifton Smith in Mecklenburg County Superior Court. Heard in the Court of Appeals 28 January 2026.

*Attorney General Jeff Jackson, by Special Deputy Attorney General Lewis W. Lamar, Jr., for the State*

*Appellate Defender Glenn Gerding, by Assistant Appellate Defender Katherine Jane Allen, for Defendant.*

GRIFFIN, Judge.

Defendant Lynwood Gerard Williams argues the trial court erred in denying his motions for mistrial arising from the State's closing argument and a law enforcement officer's testimony referring to a photograph of Defendant as a "mugshot" because these statements presented a substantial and irreparable prejudice to his case, depriving him of a fair trial. We disagree and find no error.

## I. Factual and Procedural Background

On 30 September 2020, law enforcement was granted a search warrant on Defendant's residence[1] located at 2247 Brandybuck Lane in Charlotte. The warrant was supported by information from surveillance conducted by a detective who observed Defendant walking in and out of the residence and "confidential and reliable" informant drug purchases. Among various items located within the residence and on other persons,[2] law enforcement discovered three plastic bags containing "a powdery, sandy-type substance" inside a safe within the garage. One of these bags was tested by the CMPD Crime Lab and found to contain 65.78 grams of tramadol and fentanyl, and one other bag was tested and found to consist of substances which contained tramadol, etizolam, and fentanyl, totaling 1.17 grams. Additionally, law enforcement recovered two plastic bags from Defendant's right front pants pocket, containing a total of 5.74 grams of tramadol, fentanyl, and etizolam upon CMPD Crime Lab testing.

On 3 July 2023, Defendant was indicted in case no. 20CRS233292 of trafficking by possession of 28 grams or more of fentanyl and was indicted in case no. 22CRS008623 of trafficking by possession of 4-14 grams of fentanyl. On 5 January

[1] In addition to Defendant, Defendant's wife, three children, brother-in-law, brother-in-law's girlfriend, and Defendant's administrative assistant resided in Defendant's residence.

[2] Law enforcement found 7.7 grams of heroin on Defendant's administrative assistant. Law enforcement also found "a Glock 9mm[, a] title to a vehicle in [Defendant's] name with 2247 Brandybuck Lane on the same title[, a]nd . . . a small digital scale," which were within a safe that Defendant's wife testified belonged to her.

2024, Defendant's trial began. During this trial, the State called one of the officers who executed the search warrant, Sergeant Benjamin Slauter, to testify. During his testimony, Sgt. Slauter testified he recognized Defendant in a photo on the garage wall because of a "report, and the mugshot attached to the report." Defendant objected to this, which the trial court sustained. After the jury was removed and voir dire of Sgt. Slauter conducted, Defendant moved for mistrial, arguing Sgt. Slauter prejudiced the jury. During further voir dire outside the jury's presence, Sgt. Slauter testified the photo he was referring to when he said mugshot was a photo of Defendant taken when Defendant was arrested on 30 September 2020. The trial court denied the motion for mistrial to which Defendant objected, and the State offered to ask clarifying questions of Sgt. Slauter in the presence of the jury, which the trial court allowed. When the jury returned, the State continued questioning Sgt. Slauter,

> [THE STATE:] Sgt. Slauter, before resuming your body worn camera footage, which is currently paused at 10 minutes 33 seconds, which should be exactly where we paused it before the break, you had referred to a photo -- you called it a mugshot. What photo were you referring to?
>
> [SGT. SLAUTER:] Looking at the digital image –
>
> . . . .
>
> [SGT. SLAUTER:] Looking at the digital image attached to the KB-COPS incident report for this incident.
>
> [THE STATE:] Do you know when that was taken?

[SGT. SLAUTER:] It was taken after –

. . . .

[SGT. SLAUTER:] For this report for this incident on 9/30/2020.

[THE STATE:] Was it taken in response to this incident?

[SGT. SLAUTER:] Yes, ma'am.

After the close of the State's evidence, the trial court denied Defendant's motion to dismiss the trafficking cases, and Defendant informed the trial court he would not be testifying. During closing arguments, the State, in reference to fentanyl, argued,

> In my hand I'm holding CMPD 5, State's 11, 65 grams. Half a milligram. One one-thousandth of a gram is the lethal dose, and I'm holding 65 grams in my hand. That is why this is serious. That is why you should take this seriously. This is the drug. This is the fentanyl that is in your community.

Defendant objected, and the trial court sustained. The State then continued closing,

> This is why this is important. This is why your job as jurors
> is important. The State is now asking you to do your job,
> to hold [D]efendant accountable for the fentanyl that was
> inside of his pants, and inside of his man cave.

After the jury was removed, Defendant argued the State's statement was "inappropriate and completely prejudicial" and renewed his motion for mistrial, which the trial court denied and Defendant objected. On 9 February 2024, Defendant was found guilty of trafficking by possession of 4-14 grams of fentanyl, and on 12

February 2024, Defendant was found guilty of trafficking by possession of 28 grams or more of fentanyl. Defendant was sentenced on 14 February 2024 and timely appealed.

## II. Analysis

Defendant presents two issues on appeal. First, Defendant argues "[t]he trial court erred in denying [Defendant]'s motion for a mistrial when the [State] asked the jury to act as an ear to the community in closing arguments." Second, "[t]he trial court erred in denying [Defendant's] motion for a mistrial when an officer testifying for the State testified that he had viewed [Defendant's] mugshot." We disagree on both issues.

As both issues argue error by the trial court in its denial of motions for mistrial, we review each for abuse of discretion. *State v. Wallace,* 351 N.C. 481, 529, 528 S.E.2d 326, 356 (2000) (citation omitted). Thus, this Court will reverse "only upon a showing that its ruling was so arbitrary that it could not have been the result of a reasoned decision." *State v. Hayes*, 314 N.C. 460, 471, 334 S.E.2d 741, 747 (1985) (citing *State v. Wilson,* 313 N.C. 516, 526, 330 S.E.2d 450, 458 (1985)). "A mistrial should be granted only when there are improprieties in the trial so serious that they substantially and irreparably prejudice the defendant's case and make it impossible for the defendant to receive a fair and impartial verdict." *State v. Warren*, 327 N.C. 364, 376, 395 S.E.2d 116, 123 (1990) (quoting *State v. Laws,* 325 N.C. 81, 105, 381 S.E.2d 609, 623 (1989)); *see* N.C. Gen. Stat. § 15A-1061 (2025) ("The judge must

declare a mistrial upon the defendant's motion if there occurs during the trial an error or legal defect in the proceedings, or conduct inside or outside the courtroom, resulting in substantial and irreparable prejudice to the defendant's case."). "Prejudice is identified by assessing the likely impact of any improper argument in the context of the entire closing, and by looking to the evidence presented by the State to determine whether there is a reasonable possibility the jury would have acquitted [the] defendant if the prosecutor's remarks had been excluded." *State v. Bradley*, 279 N.C. App. 389, 406–07, 864 S.E.2d 850, 864 (2021) (citation modified). Consequently, "[t]he decision whether to grant a mistrial is within the trial court's discretion and will be given 'great deference since [the trial judge] is in a far better position than an appellate court to determine whether the degree of influence on the jury was irreparable.'" *State v. Theer*, 181 N.C. App. 349, 364, 639 S.E.2d 655, 665 (2007) (quoting *State v. Williamson,* 333 N.C. 128, 138, 423 S.E.2d 766, 772 (1992)).

However, "[i]t is a well settled principle that one may not suffer prejudice where his objections are sustained." *State v. Banks*, 210 N.C. App. 30, 43, 706 S.E.2d 807, 817 (2011) (citing *State v. Call,* 349 N.C. 382, 413, 508 S.E.2d 496, 515 (1998)). Thus, "[n]o prejudice exists, for when the trial court sustains an objection to a question the jury is put on notice that it is not to consider that question." *Id.* at 43–44 (quoting *State v. Roache,* 358 N.C. 243, 296, 595 S.E.2d 381, 415 (2004)).

**A. Closing Argument**

First, Defendant argues "[t]he trial court erred in denying [Defendant]'s motion for a mistrial when the [State] asked the jury to act as an ear to the community in closing arguments." Specifically, Defendant argues he "was deprived of the ability to receive a fair trial when the trial court denied [Defendant]'s motion for a mistrial in response to the [State]'s closing arguments that the jury should convict [Defendant] because fentanyl is a serious problem that is 'in your schools' and 'in your community[.]'" Thus, according to Defendant, "[t]he [State]'s argument was improper and prejudicial," requiring Defendant's convictions "be reversed and the cases remanded to the trial court for a new trial."

Importantly, here, we are not presented with the issue of whether the trial court erred in sustaining the objection or whether what the State said during its closing argument was proper. We are solely presented with whether the trial court erred in denying the motion for a mistrial; thus, we accept the trial court's sustaining the objection and its determination that the State's statement was improper in this case without review.

As noted, we review for abuse of discretion. *Wallace,* 351 N.C. at 529, 528 S.E.2d at 356.

Here, the State said,

> In my hand I'm holding CMPD 5, State's 11, 65 grams. Half a milligram. One one-thousandth of a gram is the lethal dose, and I'm holding 65 grams in my hand. That is why this is serious. That is why you should take this seriously. This is the drug. This is the fentanyl that is in

your community. It's in your schools. It's in your --

Defendant objected, and the trial court immediately sustained. The State then

continued closing,

> This is why this is important. This is why your job as jurors
> is important. The State is now asking you to do your job,
> to hold [D]efendant accountable for the fentanyl that was
> inside of his pants, and inside of his man cave.

Upon Defendant arguing the State's statement was "inappropriate and completely

prejudicial" and renewing his motion for mistrial, the trial court denied the motion

for mistrial.

The record shows Defendant objected immediately and the trial court

immediately sustained, removing any prejudicial effect from the State's objected to

closing argument. *See Banks*, 210 N.C. App. at 43–44, 706 S.E.2d at 817 (stating

there is no prejudice when an objection is sustained). Therefore, the State's closing

argument, when the trial court sustained Defendant's objection, did not rise to the

level of serious impropriety. *Warren*, 327 N.C. at 376, 395 S.E.2d at 123.

Moreover, the State's closing argument did not substantially and irreparably

prejudice Defendant because the evidence presented provided ample support for the

jury's verdict, which included substances containing fentanyl found within

Defendant's garage and on his person, as indicated by the trial court's denial of

Defendant's motion to dismiss which goes unchallenged in this appeal. *See State v.

Boyd,* 311 N.C. 408, 418, 319 S.E.2d 189, 197 (1984) (holding that, alternatively, any

alleged impropriety was not prejudicial given that the record provided ample support for the jury's verdict); *State v. Rush,* 196 N.C. App. 307, 311, 674 S.E.2d 764, 768 (2009) (holding even if "the prosecutor's argument was grossly improper, given the amount of evidence against [the] defendant, it could not have been prejudicial"); *see also State v. Allen,* 346 N.C. 731, 739, 488 S.E.2d 188, 192 (1997) ("'Substantial evidence' is relevant evidence that a reasonable mind might accept as sufficient to support a conclusion." (citing *State v. Porter,* 303 N.C. 680, 685, 281 S.E.2d 377, 381 (1981))). Therefore, by immediately sustaining Defendant's objection to the closing argument and with the sufficient evidence for the jury to convict Defendant of the fentanyl charges, the trial court's denial of the motion for mistrial was not "so arbitrary that it could not have been the result of a reasoned decision." *Hayes,* 314 N.C. at 471, 334 S.E.2d at 747.

Defendant's argument references his administrative assistant being found with heroin on her person and the fact that a juror was a schoolteacher as showing how the State's closing argument prejudiced Defendant. However, here, as discussed, the trial court promptly sustained Defendant's objection, indicating to members of the jury the statement was improper. Further, the decision as to who the illicit substances belonged to was a question for the jury at trial, not a question this Court revisits on appeal for an alleged error regarding the denial of a motion for a mistrial. *See State v. Smith,* 221 N.C. 400, 406, 20 S.E.2d 360, 364 (1942) ("The jury alone are the triers of the facts." (citation omitted)). With the evidence presented to the jury,

the State's improper statements during closing argument referencing fentanyl "in your community" and "in your schools" do not raise a "reasonable possibility the jury would have acquitted [D]efendant if the [State]'s remarks had been excluded" to constitute irreparable prejudice. *Bradley*, 279 N.C. App. at 406–07, 864 S.E.2d at 864. Thus, we cannot say the trial court abused its discretion.

"While the State would have been better advised to have refrained from making some of the comments, any impropriety in the challenged portions of the State's closing argument did not render Defendant's trial fundamentally unfair." *State v. Privette*, 218 N.C. App. 459, 470, 721 S.E.2d 299, 308 (2012) (citation modified). Therefore, we hold the trial court did not err in its denial of the motion for mistrial regarding the State's closing argument.

**B. Mugshot Testimony**

Second, Defendant argues "[t]he trial court abused its discretion when it denied [Defendant's] motion for a mistrial following an officer's testimony that he viewed [Defendant's] 'mugshot' before executing the 2020 search warrant." We disagree.

As stated, we review for abuse of discretion. *Wallace*, 351 N.C. at 529, 528 S.E.2d at 356. Here, Defendant objected to Sgt. Slauter's testimony he recognized Defendant in a photo on the garage wall because of a "report, and the mugshot attached to the report." The trial court immediately sustained. After the jury was removed and voir dire of Sgt. Slauter conducted, Defendant moved for mistrial,

arguing Sgt. Slauter prejudiced the jury. During further voir dire outside the jury's presence, Sgt. Slauter testified the photo he was referring to when he said "mugshot" was a photo of Defendant taken when Defendant was arrested on 30 September 2020. The trial court denied the motion for mistrial to which Defendant objected, and the State offered to ask clarifying questions of Sgt. Slauter in the presence of the jury, which the trial court allowed. When the jury returned, the State continued questioning Sgt. Slauter, during which Sgt. Slauter clarified the photograph he referred to as a "mugshot" was a photograph of Defendant taken on 30 September 2020.

The State does not contest Sgt. Slauter's reference to the photo as a "mugshot" was proper, nor does the State challenge the trial court's sustaining Defendant's objection to the use of the term "mugshot" in Sgt. Slauter's initial testimony prior to clarification. Thus, we need not review whether the trial court erred in sustaining the objection, we need only review whether the trial court erred in denying the motion for mistrial in relation to Sgt. Slauter's reference to Defendant's photo as a mugshot.[3]

Defendant's argument rests on the rule "[w]hen a defendant charged with a criminal offense does not take the stand as a witness and does not offer evidence of

---

[3] Further, while the trial court did initially sustain Defendant's objection to the use of term "mugshot," putting the jury on notice to disregard "mugshot," *see Banks*, 210 N.C. App. at 43–44, 706 S.E.2d at 817, the trial court allowed the State to clarify as to what photograph the "mugshot" referred. Thus, we review whether the trial court's decision to ultimately allow Sgt. Slauter's statement was prejudicial in light of the State's clarification.

his good character, the State cannot offer evidence of his bad character, including his previous criminal record, nothing else appearing," including "mugshots." *State v. Foster*, 63 N.C. App. 531, 535–36, 306 S.E.2d 126, 128–29 (1983) (citing *State v. Fulcher*, 294 N.C. 503, 513, 243 S.E.2d 338, 345–46 (1978)). As Defendant argues, this rule is premised upon the fact that "[b]ecause people assume (often incorrectly) that those with a criminal history are more likely to commit future crimes, knowledge that a defendant has a criminal past poses a significant risk of prejudice." *State v. Lynch*, 254 N.C. App. 334, 338, 803 S.E.2d 190, 193 (2017). However, here, the clarification by Sgt. Slauter removed that "significant risk of prejudice" because he testified what he referred to as a "mugshot" was a photograph taken on 30 September 2020, the date of law enforcement's search of Defendant's residence in the instant case, not a reference to prior bad acts or criminal history. With the jury properly apprised of the nature and time of the photograph, Sgt. Slauter's previous reference to the photograph as a "mugshot" was not "so serious that [it] substantially and irreparably prejudice[d] [D]efendant's case and ma[d]e it impossible for [him] to receive a fair and impartial verdict." *Warren*, 327 N.C. at 376, 395 S.E.2d at 123.

The trial court's denial of a mistrial based on Sgt. Slauter's reference to the photograph of Defendant as a "mugshot" does not constitute a decision "so arbitrary that it could not have been the result of a reasoned decision," *Hayes*, 314 N.C. at 471, 334 S.E.2d at 747, to be an abuse of discretion. Therefore, we hold there was no error with the trial court's denial of the motion for a mistrial regarding the reference to the

photograph as a "mugshot" when the nature of the photograph and the date it was taken was later clarified for the jury.

### III.    Conclusion

We hold there was no error in the trial court's decisions to deny Defendant's motions for mistrial because there were no improprieties in the trial so serious that they substantially and irreparably prejudiced Defendant's case or deprived him of a fair trial.

NO ERROR.

Judges HAMPSON and GORE concur.