STATE OF NORTH CAROLINA v. THOMAS M. HOOPER

No. 103A86

(Filed 6 January 1987)

**Criminal Law § 48.1— assertion of constitutional rights—erroneously admitted**

The Court of Appeals erred by finding prejudicial error and awarding a new trial in a homicide prosecution where the trial court admitted testimony that defendant had given a statement which ended with the assertion of his constitutional rights. The evidence presented by the State was ample to show defendant's motive, opportunity, and means to kill the victim, and points overwhelmingly to his culpability.

Justice WEBB did not participate in the consideration or decision of this case.

THE State appeals from a decision of a divided panel of the Court of Appeals, 79 N.C. App. 93, 339 S.E. 2d 70 (1986), ordering a new trial for defendant upon his conviction of murder in the second degree. Judgment was entered by *Gudger, J.*, at the 17 January 1985 Criminal Session of Superior Court, POLK County. Heard in the Supreme Court 11 December 1986.

*Lacy H. Thornburg, Attorney General, by Sylvia Thibaut, Assistant Attorney General, for the State-appellant.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Geoffrey C. Mangum, Assistant Appellate Defender, for defendant-appellee.*

WHICHARD, Justice.

On the morning of 28 July 1983, Todd Bradfield was found unconscious in his truck just off Hogback Mountain Road near Tryon, North Carolina. He had two gunshot wounds in his head. He was taken to a local hospital, where he died several days later without having regained consciousness.

Defendant was arrested the afternoon of 28 July in Greenville, South Carolina, on a fugitive from justice warrant charging him with assault with a deadly weapon. He was detained in the Greenville Law Enforcement Center and given his *Miranda* warnings. According to the testimony of Officer Reed, an agent with the State Bureau of Investigation, defendant waived his rights and responded to questions. His responses included a statement, the substance of which Officer Reed recounted in the following testimony:

> Mr. Hooper stated that he had been working surveillance on Mr. Bradfield because Bradfield had moved in with his wife, Sarah Hooper. He said that he had in his possession over two hundred photographs of Mr. Bradfield and Sarah Hooper and that he and some of his friends had made these photographs. He said that one of the friends that had helped him make these photographs was Ed Penry, and he described Ed Penry as an expert photographer. He further said that, on occasions, his roommate, Pete Peterson, had helped him with the surveillance and that he said that Mr. Peterson "was with me this morning," and then stopped right there and asserted his Constitutional rights at that point.

Defendant's counsel objected but did not move to strike this testimony. This Court has said that "[f]ailure to move to strike a portion of an answer, even though the answer is objected to, results in waiver of the objection." *State v. Marlow*, 310 N.C. 507, 523, 313 S.E. 2d 532, 542 (1984). Defendant otherwise properly noted his exception in the record in accord with Rule 10(a)(1) of the Rules of Appellate Procedure. In order to review what defendant contends was an error of fundamental magnitude, we exercise our supervisory jurisdiction and pass upon the question presented despite the fact that defendant's objection is deemed waived. Rule 2, Rules of Appellate Procedure; *State v. Elam*, 302 N.C. 157, 161, 273 S.E. 2d 661, 664 (1981).

Defendant contends that Officer Reed's remark that defendant had "stopped . . . and asserted his Constitutional rights" was a violation of those rights. The Court of Appeals agreed and awarded defendant a new trial. Judge (now Justice) Webb dissented on the grounds that he did not believe the admission of Officer Reed's statement was prejudicial error. When an appeal is

taken pursuant to N.C.G.S. 7A-30(2), the scope of this Court's review is properly limited to the issue upon which the dissent in the Court of Appeals diverges from the opinion of the majority. Rule 16(b), Rules of Appellate Procedure; *Blumenthal v. Lynch, Sec. of Revenue,* 315 N.C. 571, 577-78, 340 S.E. 2d 358, 361 (1986). Because the Court of Appeals panel agreed that Officer Reed's testimony violated defendant's constitutional rights, we do not address this question. We examine only whether any error in admitting this testimony was prejudicial.

The test for whether an error of constitutional magnitude is prejudicial is codified at N.C.G.S. 15A-1443(b): "A violation of the defendant's rights under the Constitution of the United States is prejudicial unless the appellate court finds that it was harmless beyond a reasonable doubt. The burden is upon the State to demonstrate, beyond a reasonable doubt, that the error was harmless." *Id.; Chapman v. California,* 386 U.S. 18, 17 L.Ed. 2d 705 (1967). "Harmless beyond a reasonable doubt" has been interpreted to mean that "there is no reasonable possibility" that the erroneous admission of evidence "might have contributed to the conviction." *State v. Castor,* 285 N.C. 286, 292, 204 S.E. 2d 848, 853 (1974).

> Every violation of a constitutional right is not prejudicial. Some constitutional errors are deemed harmless in the setting of a particular case, not requiring the automatic reversal of a conviction, where the appellate court can declare a belief that it was harmless beyond a reasonable doubt. Unless there is a reasonable possibility that the evidence complained of might have contributed to the conviction, its admission is harmless.

*Id., quoting State v. Taylor,* 280 N.C. 273, 280, 185 S.E. 2d 677, 682 (1972) (citations omitted).

We are persuaded that the evidence in question here "was of such insignificant probative value when compared with the overwhelming competent evidence of guilt that its admission did not contribute to defendant's conviction and therefore admission of the evidence was harmless . . . beyond a reasonable doubt." *State v. Gardner,* 315 N.C. 444, 449, 340 S.E. 2d 701, 706 (1986), *quoting State v. Williams,* 288 N.C. 680, 693, 220 S.E. 2d 558, 568 (1975).

Evidence presented by the State was largely circumstantial; but it was ample to show defendant's motive, opportunity, and means to kill Bradfield.

Defendant's wife testified that she and defendant had been separated since November 1982. She had met Bradfield in March 1983, and she was planning to marry him and to move with her three children to a house he was building in Tryon. The house mysteriously burned down on 1 July. Defendant and his wife were involved in a custody dispute throughout that summer.

A number of neighbors testified that they were aware that defendant had been watching his wife and Bradfield in preparation for his custody case; defendant's attorney in that matter testified that he had advised defendant to conduct such surveillance.

A resident of Hogback Mountain Road testified that at ten o'clock a.m. on 28 July he had been driving down the road when he met two vehicles coming up the mountain "as if one were chasing the other or they were racing each other." The first vehicle he later identified as Bradfield's truck; the second he described as "a small sports car, like a Toyota . . . [which was] blue or gray." Another resident of Hogback Mountain Road testified that, at approximately the same time that morning, she heard a sound like that of a car backfiring. The sound was repeated three times, and she then heard a car crash. As she walked towards where the sounds had originated, she saw a gray compact car moving down the road "at quite a clip." The witness who had met Bradfield's truck and the small gray car on the road described the driver of the second vehicle as a white male in his late thirties or early forties, with glasses and a beard with gray streaks. An SBI agent who had interviewed defendant in connection with the fire at Bradfield's Tryon house thought these features described defendant, and, suspecting that defendant had assaulted Bradfield, he requested South Carolina authorities to arrest defendant.

A search of the truck defendant had been driving when he was arrested in South Carolina revealed a duffel bag behind the front seat containing a .45 caliber handgun, a box of .45 caliber ammunition, and a dark, curly wig. An SBI firearms expert testified that a bullet taken from Bradfield's skull had been fired by

that handgun, as had four .45 caliber shell casings found inside Bradfield's truck.

The SBI officer who had initially interviewed defendant concerning the fire at Bradfield's house testified that, around five o'clock on the afternoon of the 28th, he took wipings from defendant's hands. The swabs were later analyzed for the presence of gunshot residue. The forensic chemist who performed the analysis testified that he found a "significant" concentration of particles, meaning that they were "indicative of gunshot residue"; but he was unwilling to give an opinion that defendant had fired a gun because the particles were not dispersed over defendant's hands in the "normal" pattern of concentrations. Nevertheless, the chemist's report closed with the remark that "this does not eliminate the possibility that the subject would have fired a gun."

Finally, the same officer also testified that, while defendant was out on bond following his being charged with Bradfield's murder, defendant told him that he appreciated the officer's. continuing the investigation despite the fact that they · had "the motive, the gun, [and] the man. . . ."

We find that the foregoing evidence, including the implication of defendant's own admission, points overwhelmingly to his culpability in the murder. Any error in admitting that portion of defendant's statement in which he asserted his constitutional right to remain silent thus "did not contribute to [his] conviction and therefore . . . was harmless . . . beyond a reasonable doubt." *Gardner*, 315 N.C. at 449, 340 S.E. 2d at 706.

The decision of the Court of Appeals ordering a new trial is accordingly

Reversed.

Justice WEBB did not participate in the consideration or decision of this case.