STATE OF NORTH CAROLINA v. PERRY RALPH WARREN

No. 456A89

(Filed 29 August 1990)

1. **Homicide § 25.2 (NCI3d) — murder — premeditation and deliberation — instructions**

   The evidence in a murder prosecution supported an instruction that premeditation and deliberation could be proved by circumstances including the brutal or vicious circumstances of the killing where the evidence tended to show that defendant beat the victim with a baseball bat before shooting him in the back as he fled, the instruction was a direct quote from the N. C. Pattern Jury Instructions, and the elements listed in the challenged instruction are merely examples of circumstances which may be used by the jury to infer premeditation and deliberation. It is not required that each of the circumstances be proven beyond a reasonable doubt.

   **Am Jur 2d, Homicide § 501.**

2. **Homicide § 30 (NCI3d) — murder — instruction on second degree murder denied — no error**

   The trial court did not err in a first degree murder prosecution by denying defendant's request for submission of a possible verdict finding him guilty of second degree murder where the State's evidence unequivocally tended to show an inten-

STATE v. WARREN

[327 N.C. 364 (1990)]

tional killing with premeditation and deliberation and defendant simply testified that he did not shoot the victim. There was no evidence in the record to support a reasonable finding by the jury that defendant killed the victim without premeditation and deliberation.

**Am Jur 2d, Homicide § 530.**

3. **Criminal Law § 753 (NCI4th)— murder—instruction on presumption of innocence—no error**

The trial court did not err in a murder prosecution by denying defendant's request to instruct the jury that it was to presume his innocence "unless and until the contrary is proven beyond a reasonable doubt" where the instruction given adequately links the burden of proof with the presumption of innocence.

**Am Jur 2d, Homicide § 509; Trial § 763.**

4. **Homicide § 15 (NCI3d)— murder—cross-examination of defendant—previous testimony misstated—no prejudicial error**

There was no prejudicial error in a murder prosecution where the State was allowed to misstate a previous witness's testimony in cross-examining defendant because defendant had previously answered essentially the same question and because defendant denied that the witness had testified as stated by the prosecution and denied that her testimony was truthful.

**Am Jur 2d, Homicide §§ 536, 540.**

5. **Criminal Law § 73.1 (NCI3d)— murder—hearsay—defendant involved in drugs—admission not prejudicial**

There was no prejudicial error in a murder prosecution from the admission of hearsay testimony tending to show defendant's involvement in the drug business where this evidence was of little probative value when compared to the overwhelming competent evidence of defendant's guilt.

**Am Jur 2d, Homicide § 310.**

6. **Homicide § 15 (NCI3d)— murder—irrelevant cross-examination of defendant—no prejudice**

There was no prejudicial error in a murder prosecution from the State's cross-examination of defendant about whether he worked every day, the number of suits he owned, and

whether he knew a certain person. There was plenary eyewitness testimony identifying defendant as having shot and killed the victim and, even assuming this evidence was inadmissible, it was innocuous and could not have contributed to the defendant's conviction.

**Am Jur 2d, Homicide § 536.**

**7. Criminal Law § 169.3 (NCI3d) — notes admitted without objection — subsequently read by jury — no error**

The trial court did not err in a murder prosecution by allowing the jury to view two of defendant's handwritten notes which had been introduced into evidence and read to the jury where defendant did not object to the notes when they were introduced or when they were read to the jury.

**Am Jur 2d, Trial § 185.**

**8. Criminal Law § 544 (NCI4th) — murder — cross-examination — reference to defendant's prior imprisonment — mistrial denied**

The trial court did not err in a murder prosecution by denying defendant's motion for a mistrial after the State made three references to defendant's time in prison where defendant had testified on direct examination that he had been convicted seven separate times of various crimes and any potential adverse impact of additional information was minimal.

**Am Jur 2d, Homicide § 310.**

**9. Appeal and Error § 425 (NCI4th) — arguments or citations not presented — assignment of error abandoned**

An assignment of error was deemed waived where defendant presented neither argument nor citation of authority.

**Am Jur 2d, Appeal and Error §§ 697, 700.**

APPEAL of right pursuant to N.C.G.S. § 7A-27 from a judgment entered by *Hudson, J.,* in the Superior Court, WAKE County, on 23 June 1989, sentencing the defendant to life imprisonment for murder in the first degree. Considered pursuant to N.C.R. App. P. 30(d), without oral argument, by the Supreme Court on 16 May 1990.

## STATE v. WARREN

[327 N.C. 364 (1990)]

*Lacy H. Thornburg, Attorney General, by David F. Hoke, Assistant Attorney General, for the State.*

*John T. Hall for the defendant-appellant.*

MITCHELL, Justice.

The defendant, Perry Ralph Warren, was tried in a noncapital trial upon a true bill of indictment charging him with the murder of Leon Henry. The State's evidence presented at trial tended to show, *inter alia*, that Ester Jackson called the police to investigate gunshots fired outside her apartment in the early morning hours of 7 October 1988. Responding to the call at the Southgate Apartments, officers with the Raleigh Police Department and the City-County Bureau of Identification found Leon Henry's lifeless body lying on the ground outside Jackson's apartment. Subsequently, they questioned witnesses and conducted their investigation of the crime.

Harold Lewis Wortham testified that he was with Leon Henry on 7 October 1988. He watched Henry argue with the defendant outside a building at the Southgate Apartments. As Henry and the defendant walked to Henry's truck, Anthony Boyd jumped Henry and began to beat him. The defendant joined the fight, hitting Henry with a baseball bat. When Henry broke free and tried to run away, the defendant ran between some cars, raised a pistol and shot twice. Henry took a couple of steps and then fell to the ground.

Michael Anthony Hinton testified that he was riding around with the defendant on 7 October 1988. The defendant pulled into the parking lot of the Southgate Apartments to take care of some business. Hinton observed the defendant's argument with Leon Henry. He also saw the defendant and Anthony Boyd fight with Henry. As Hinton walked over to the fight, he saw a gun in the defendant's hand. As Henry jumped up and ran away, the defendant pointed the gun at Henry and shot him. Hinton testified that the defendant threw the gun at him after the shooting. Thereafter, Hinton took the gun to his house and buried it under a tire in his back yard.

Anthony Boyd testified that he saw the defendant approach Leon Henry with a baseball bat on 7 October 1988. He heard the defendant demand money from Henry. The defendant made Henry

STATE v. WARREN

[327 N.C. 364 (1990)]

take everything out of his pockets and then took the keys to Henry's truck. The defendant struck Henry on the shoulder with the baseball bat. Boyd pushed Henry to the ground and, while Henry was on the ground, the defendant looked into Henry's truck. At that point, Henry tried to run away, but the defendant pulled out a gun and shot him. Boyd then gave Michael Hinton a ride home. Hinton had the defendant's gun in his possession when he got out of the car.

Melissa Jones testified that she saw the defendant receive a gun in exchange for some cocaine several days before Leon Henry was shot. She identified the gun in evidence at trial as being the one she saw given to the defendant in exchange for cocaine. She further testified that Boyd told her that the defendant shot someone on 7 October 1988.

Kim Castle testified that she was on a date with the defendant on 7 October 1988. After the defendant parked his car at the Southgate Apartments, she observed the defendant hit Leon Henry with a baseball bat. While she did not see the defendant shoot Henry, she did see the defendant holding a gun immediately after the shots were fired.

Dr. Dewey Harris Pate testified that the cause of Henry's death was the loss of blood from a gunshot wound to the back.

At trial, the defendant denied shooting Leon Henry. He testified that he used cocaine and drank beer and gin during most of the day before Henry was killed. While on a date with Kim Castle, he ended up in the parking lot at the Southgate Apartments. He got out of his car carrying his baseball bat. Outside, he spoke to Leon Henry, who owed him $50. As they walked to Henry's truck, Henry grabbed the defendant's arms. At that time, Harold Wortham stuck a knife to the defendant's throat and demanded money. Anthony Boyd pushed Henry to the ground, and the defendant swung the bat at Henry but missed. At this point, Henry ran away. The defendant testified that Michael Hinton pulled a gun and shot Henry in the back. Immediately after the shooting, Hinton handed the gun to the defendant. The defendant handed the gun back to Hinton and left with his date.

The jury found the defendant guilty of first-degree murder on the theory that the killing was premeditated and deliberate. The District Attorney having indicated that the State could pro-

duce no evidence of aggravating circumstances, the trial court sentenced the defendant to the mandatory term of life in prison.

Additional evidence and other matters relevant to the defendant's specific assignments of error are discussed at other points in this opinion.

[1] On appeal, the defendant argues that the trial court erred when it instructed the jury as follows:

> Neither premeditation nor deliberation are usually susceptible of direct proof. They may be proved by circumstances from which they may be inferred, such as lack of provocation on the part of the victim, conduct of the defendant before, during, and after the killing, threats and declarations of the defendant, *brutal or vicious circumstances of the killing*, and the manner in which or the means by which the killing was done.

The defendant argues that this instruction amounted to error requiring a new trial because "the evidence in this case [does] not justify the use of the phrase 'brutal or vicious circumstances of the killing.'" We do not agree.

The instruction was a direct quote from the North Carolina Pattern Jury Instructions. N.C.P.I.—Crim. 206.13. The elements listed in the challenged instruction are merely examples of circumstances which, if present, may be used by the jury to infer premeditation and deliberation. *State v. Cummings*, 326 N.C. 298, 315, 389 S.E.2d 66, 76 (1990). It is not required that each of the circumstances listed by the trial court in this instruction be proven beyond a reasonable doubt before the jury may infer premeditation and deliberation. *Id.*

Further, we conclude that the challenged portion of the instruction was justified because the evidence presented at trial tended to show that the defendant beat the victim with a baseball bat before shooting him in the back as he fled. Several witnesses testified that the defendant approached Leon Henry with the bat in his hand. After a disagreement, the defendant beat the victim to the ground with the bat. Thereafter, when Henry broke away from the defendant and attempted to run, the defendant pointed and fired a gun at Henry, shooting him in the back. Under these circumstances, we conclude that the trial court's instruction concerning the "brutal or vicious circumstances of the killing" was supported by the evidence. This assignment of error is without merit.

[2] By his next assignment of error, the defendant contends that the trial court committed reversible error by denying his request for submission of a possible verdict finding him guilty of second-degree murder. We disagree.

While second-degree murder is a lesser included offense of premeditated and deliberate first-degree murder, the trial court was not required to submit a verdict on that lesser included offense unless it was supported by the evidence. *State v. Strickland*, 307 N.C. 274, 298 S.E.2d 645 (1983). The mere fact that a jury could selectively believe part of the State's evidence and disbelieve part of it did not entitle the defendant to an instruction on a lesser included offense. *State v. Brewer*, 325 N.C. 550, 576, 386 S.E.2d 569, 583 (1989), *cert. denied*, --- U.S. ---, 109 L. Ed. 2d 541 (1990). If, however, there was any positive evidence tending to support the lesser included offense of second-degree murder, then it was the trial court's duty to submit a possible verdict for that lesser included offense, after appropriate instructions. *State v. Strickland*, 307 N.C. at 285, 298 S.E.2d at 653.

The defendant argues that the evidence at trial would have supported a reasonable finding by the jury that he did not act with premeditation and deliberation. However, the State's evidence tended to show that the defendant initiated the confrontation with Henry. Several witnesses testified that the defendant approached Henry with a baseball bat in hand and demanded money. The defendant then beat Henry with the bat. As the victim attempted to run away, the defendant drew his gun, aimed, and shot Henry in the back. With Henry lying on the ground, the defendant announced to several of the witnesses, "I better not hear nothing about this." The defendant then left the area. The victim died as a result of the gunshot wound to the back. Such evidence unequivocally tends to show an intentional killing with premeditation and deliberation. The defendant, on the other hand, simply testified at trial that he did not shoot the victim at all. We find no evidence in the record to support a reasonable finding by the jury that the defendant killed Leon Henry, but did so without premeditation and deliberation. Therefore, the evidence would not have supported a verdict finding the defendant guilty of second-degree murder, and the trial court did not err in failing to submit such a possible verdict to the jury.

[3]  The defendant also argues that the trial court erred by deny-ing his request to instruct the jury that it was to presume his innocence "unless and until the contrary is proven beyond a reasonable doubt." Instead, the trial court instructed the jury as follows:

> The defendant in this case has entered a plea of not guilty. The fact that he has been charged is not evidence of his guilt. Under our system of justice when a defendant pleads not guilty, he is not required to prove his innocence; he is presumed to be innocent. The State must prove to you that the defendant is guilty beyond a reasonable doubt.

The defendant argues that this instruction amounted to error re-quiring a new trial because it failed to link "the concept of the presumption [of innocence] with the standard of proof beyond a reasonable doubt." We disagree.

A trial court is not required to give requested instructions verbatim. *State v. Corn*, 307 N.C. 79, 86, 296 S.E.2d 261, 266 (1982). However, if a party requests an instruction which is a correct statement of the law and is supported by the evidence, the court must give the instruction at least in substance. *Id.* In this case, the instruction given the jury, when read as a whole, adequately links the burden of proof with the presumption of innocence. *State v. Flowers*, 318 N.C. 208, 347 S.E.2d 773 (1986). We conclude that this assignment of error is without merit.

[4]  By his next assignment of error, the defendant argues that the trial court abused its discretion by allowing the State to assume facts contrary to the evidence when questioning the defendant during cross-examination as to whether Kim Castle, a witness for the State, had told the truth during her testimony. The State's witness, Kim Castle, testified on direct examination as follows:

> I asked [the defendant] did he shoot the deceased and *he said he didn't know*, and I said what do you mean you didn't know. He said, *I don't know* because it was dark, and I said, well, did you know — did you shoot him? He said *he didn't know.* . . .

The defendant later testified on direct examination that he told Castle he was not sure whether Henry had been shot, but he thought that a third person had done the shooting. Thereafter, during the State's cross-examination of the defendant, the State misstated Castle's testimony and the following colloquy occurred:

STATE v. WARREN

[327 N.C. 364 (1990)]

Q. Do you recall [Kim Castle] testifying when she asked you, [defendant], did you shoot that man, *you said I think I did*? Do you recall her saying that on the stand?

A. No, I didn't.

Q. Is it your testimony she didn't say that?

A. I can't recall her saying that.

Q. Okay. If she said that, then she would be telling a lie on you, wouldn't she?

A. If she have she would, she would have misinterpreted.

Q. I'm asking you what she said, not how you interpreted it or—your testimony is, when you got on the stand, when you answered Mr. Hall's [defendant's attorney] question about those things you think I did, you said no, no, she was wrong, that is what I did. Do you recall Mr. Hall asking those questions about you and Kim talking about the shooting?

A. Yes, sir.

Q. And she testified that you said, *I think I did*. And, Mr. Hall asked you the question about what you said. You said, oh, no, I didn't say that, I said I think he could have. Is that the way you told that story?

A. Yes.

[DEFENSE ATTORNEY]: Objection, Your Honor. It assumes facts not in evidence.

COURT: Overruled.

Q. Has Kim Castle told the absolute truth to this jury about what happened that night?

A. If she stated that I said *I think I did*, she did not tell the truth. If she stated that in that way, she didn't tell the truth about that.

The defendant argues, without citing any authority, that the trial court's ruling on his objection amounted to error requiring a new trial because it allowed the State to cross-examine him with a question that misstated Castle's testimony. We disagree.

Generally, much latitude is given counsel on cross-examination to test matters related by a witness on direct examination. *State v. Burgin*, 313 N.C. 404, 329 S.E.2d 653 (1985). The scope of cross-examination is subject to two limitations: (1) the discretion of the trial court; and (2) the questions offered must be asked in good faith. *State v. Dawson*, 302 N.C. 581, 585, 276 S.E.2d 348, 351 (1981). Furthermore, the questions of the State on cross-examination are deemed proper unless the record discloses that the questions were asked in bad faith. *Id.* at 586, 276 S.E.2d at 352.

Prior to the defendant's objection, the State asked the defendant if he remembered Kim Castle's testimony that the defendant had said he thought he shot the victim. Although the State had misstated Castle's testimony, the defendant answered and specifically denied that she had testified in this manner. Later, when the State repeated its misstatement of Castle's testimony as a preface to another question, the defendant objected because the misstatement assumed facts not in evidence. The defendant had previously answered essentially the same question concerning Castle's testimony without an objection. Where evidence is admitted over objection after the same evidence has already been admitted without objection, the benefit of the objection is lost. *State v. Hunt*, 325 N.C. 187, 196, 381 S.E.2d 453, 458 (1989).

Even assuming error *arguendo*, any misstatement of Kim Castle's testimony by the State could not have been harmful, because the defendant denied that she had testified as stated by the prosecutor and denied that her testimony was truthful. Under these circumstances, the defendant has failed to show that the State's misstatement of Castle's testimony was prejudicial. N.C.G.S. § 15A-1443(a) (1988). This assignment of error is overruled.

[5] By another assignment of error, the defendant argues that the trial court erred in admitting the testimony of two witnesses tending to show the defendant's involvement in the drug business, because the testimony was in the form of inadmissible hearsay. The trial court allowed Harold Wortham to testify over objection that someone had told his grandmother to warn him away from the Southgate area where drugs were sold. The trial court also allowed Wortham to testify over objection that someone told him the defendant wanted some cocaine. Melissa Jones, another witness, was allowed to testify over the defendant's objection about a conversation between Larry McAllister and the defendant. The

defendant submits, *inter alia*, that such testimony violated his Sixth Amendment right to confront witnesses and prevented him from receiving a fair trial. We do not agree.

It is well established that the erroneous admission of hearsay is not always so prejudicial as to require a new trial. *State v. Ramey*, 318 N.C. 457, 470, 349 S.E.2d 566, 574 (1986). N.C.G.S. § 15A-1443(b) provides:

> A violation of the defendant's rights under the Constitution of the United States is prejudicial unless the appellate court finds that it was harmless beyond a reasonable doubt. The burden is upon the State to demonstrate, beyond a reasonable doubt, that the error was harmless.

Even if it is assumed *arguendo*, that all of the testimony complained of here was inadmissible hearsay, we are convinced beyond a reasonable doubt that any error in its admission was harmless. At trial, several eyewitnesses testified that they saw the defendant beat Leon Henry with a baseball bat and then shoot him as he tried to run away. The evidence the defendant complains of here was of so little probative value, when compared to the overwhelming competent evidence of the defendant's guilt, that we conclude it did not contribute to the defendant's conviction. *State v. Hooper*, 318 N.C. 680, 351 S.E.2d 286 (1987). At trial, several eyewitnesses testified that they saw the defendant beat Leon Henry with a baseball bat and then shoot him as Henry tried to run away. We conclude, therefore, that if the admission of the evidence in question was error, it was harmless beyond a reasonable doubt. *Id.*; N.C.G.S. § 1443(b) (1988). We find no merit in this assignment of error.

[6] By another assignment of error, the defendant argues that the trial court committed reversible error by allowing the State to cross-examine him about irrelevant matters. During the State's cross-examination of the defendant, the trial court allowed the prosecutor to question the defendant over objection about whether he worked every day and the number of suits he owned. The trial court also allowed the State to question the defendant over objection about whether he knew a man named Joe with a certain telephone number. The defendant argues that the State's cross-examination was irrelevant and amounted to error requiring a new trial because it violated his rights to due process and equal protection under both the state and federal constitutions. We do not agree. Plenary eyewitness testimony identified the defendant as

STATE v. WARREN

[327 N.C. 364 (1990)]

having shot and killed Leon Henry. Even if it is assumed *arguendo* that the evidence complained of was inadmissible and that its admission violated constitutional protections, it was innocuous and could not have contributed to the defendant's conviction. Therefore, any error in this regard was harmless beyond a reasonable doubt. *State v. Hooper*, 318 N.C. 680, 351 S.E.2d 286 (1987).

[7] The defendant also argues under this assignment of error that the trial court erred by allowing the jury to view two of the defendant's handwritten notes which had been introduced into evidence and read to the jury without objection. The record reveals that the defendant read both notes to the jury after they had been introduced into evidence. The trial court asked the jury whether it had been able to hear the reading. Some of the jurors responded that they hardly heard the reading, and the trial court allowed the prosecutor to pass the notes to the jury. The defendant objected. The defendant argues that the trial court committed reversible error because the notes were not relevant evidence. We do not agree.

When the two handwritten notes were admitted into evidence, the defendant did not object. Further, there was no objection when the defendant read the notes to the jury. Therefore, the defendant cannot now complain that the two notes were inadmissible as evidence. When evidence is admitted over objection after the same evidence has previously been admitted without objection, the benefit of the objection is lost. *State v. Hunt*, 325 N.C. 187, 196, 381 S.E.2d 453, 458 (1989). This assignment of error is without merit.

[8] By his next assignment of error, the defendant argues that it was error to deny his motion for mistrial after the State made three references to his time spent in prison. During the State's cross-examination of the defendant, the prosecutor asked the defendant the following questions:

Q. Well, when you came out of prison, did you have to get a whole new wardrobe?

. . .

Q. As of the time you went to prison, how many suits did you own?

. . .

STATE v. WARREN

[327 N.C. 364 (1990)]

Q. As of October 7th, 1988 when you went to prison—I assume—have you bought any suits since you have been in prison?

After these questions had been asked of the defendant, he made a motion for mistrial, which the trial court denied. The defendant contends that the trial court's error in denying his motion for a mistrial amounted to reversible error because the references to his imprisonment prejudiced him and made it more likely that the jury would convict him of the charges in this case. We disagree.

The decision to grant or deny a mistrial rests in the sound discretion of the trial court. *State v. Laws*, 325 N.C. 81, 105, 381 S.E.2d 609, 623 (1989), *judgment vacated on other grounds*, --- U.S. ---, 108 L. Ed. 2d 603 (1990). "A mistrial should be granted only when there are improprieties in the trial so serious that they substantially and irreparably prejudice the defendant's case and make it impossible for the defendant to receive a fair and impartial verdict." *Id.*; N.C.G.S. § 15A-1061 (1988). Consequently, a trial court's decision concerning a motion for mistrial will not be disturbed on appeal unless there is a clear showing that the trial court abused its discretion. *Id.* We do not perceive that the State's cross-examination concerning the defendant's imprisonment prevented a fair and impartial trial. At trial, the defendant testified on *direct* examination that he had been convicted seven separate times of various crimes. Therefore, any potential adverse impact of additional information regarding the defendant's imprisonment was minimal. We conclude that the defendant has failed to show that the trial court abused its discretion by denying a mistrial. This assignment of error is without merit.

[9] By his next assignment of error, the defendant contends that the trial court improperly denied his motion to strike the response of Harold Wortham to a question posed by the defendant on cross-examination. During the defendant's cross-examination of Wortham the following colloquy occurred:

Q. Okay, are you saying you don't remember saying, or you deny saying to Detective Howard later that day, you know, I couldn't see over the car because he was laying flat, talking about Leon?

A. Leon was laying flat, not when he was beating Leon. Let me say something. When they was beating him, okay,

Leon was just saying hey, man, don't hurt me, please don't hurt me. That's what he was saying. He was saying, please don't hurt me, man, I told you I would give you my TV. He was trying to, you know, tell them in so many words, please, man, don't hurt me. That's, that's all he was saying. So after Leon—after they ceased the beating part, that's when Leon, you know, saw that he could jump and run and when he saw a little light and he went for it, and when he jumped and ran, that's when Perry shot twice. The only thing I heard was oh, oh, with the understanding that, hey maybe the bullet could have braced him. Because he shot twice. I thought maybe one missed him and one braced him or he could have braced him. I didn't know Leon was dead until Perry and them left. I went around to Debra's house. They said, hey, a man got killed out here. I said, who? Some people riding out there and I knew what Leon was wearing. I looked in the grass and I said, dog—

COURT: Mr. Wortham, just answer his question. Answer his question if you can answer it the way he asked it, if you can. You may explain your answer if you feel like you need to explain it.

After the trial court directed Wortham to answer the question more directly, the defendant moved to strike on the ground that Wortham's answer had been unresponsive. The trial court denied the motion. In support of his assignment contending that the trial court erred in this ruling, the defendant presents neither argument nor citation of authority. He has therefore waived his exception to this ruling, and it is deemed abandoned. *State v. Bright*, 320 N.C. 491, 358 S.E.2d 498 (1987); N.C.R. App. P. 28(b)(5) (1989).

By his final assignment of error, the defendant contends that the trial court committed reversible error in denying his motion to dismiss after the return of the jury's guilty verdict for first-degree murder. The defendant argues that the State failed to introduce any substantial evidence tending to show premeditation or deliberation on his part in the killing of Leon Henry. For reasons previously stated in this opinion, we do not agree. This assignment is overruled.

For the reasons stated, we hold that the trial of the defendant was free of reversible error.

No error.