STATE OF NORTH CAROLINA, Plaintiff v. RONDA TENEILLE SINGLETARY, Defendant

No. COA03-172

(Filed 6 April 2004)

## 1. Evidence— prior convictions—admissions not plain error

The cross-examination of an assault defendant about prior convictions was not plain error where the evidence against the defendant was overwhelming.

## 2. Robbery— sufficiency of evidence—use of dangerous weapon

There was sufficient evidence that defendant used a dangerous weapon in a robbery where the victim did not see the weapon, no weapon was produced at trial, but medical testimony indicated that the victim's injuries were consistent with the use of a foreign instrument against the back of her head and the doctor's opinion was that her injuries had occurred before she fell to the curb.

## 3. Assault— on a handicapped person—sufficiency of evidence

There was sufficient evidence that a defendant in a prosecution for assault on a handicapped person knew or should have known of the handicap. Although N.C.G.S. § 14-32.1(e) does not specifically require that a defendant know that his victim is handicapped, the knowledge requirement is in keeping with the purpose and intent of the legislature and is consistent with the interpretation of the statute for assault on a law enforcement officer.

STATE v. SINGLETARY

[163 N.C. App. 449 (2004)]

**4. Sentencing— aggravating factor—position of leadership— sufficiency of evidence**

There was sufficient evidence in an assault sentencing proceeding to find that defendant occupied a position of leadership.

Appeal by defendant from judgment entered 4 April 2002 by Judge William Z. Wood, Jr., in Forsyth County Superior Court. Heard in the Court of Appeals 18 November 2003.

*Attorney General Roy Cooper, by Assistant Attorney General Lisa C. Glover, for the State.*

*Belser & Parke, P.A., by David G. Belser, for defendant-appellant.*

TIMMONS-GOODSON, Judge.

Ronda Teneille Singletary ("defendant") appeals her convictions of robbery with a dangerous weapon and aggravated assault on a handicapped person. For the reasons stated herein, we hold that defendant received a trial free of prejudicial error.

The pertinent facts of the instant appeal are as follows: Deloris Sampedro ("Sampedro") is a sixty-five year old woman who weighs approximately 105 pounds and is hearing impaired. At approximately 6 p.m. on 14 June 2001, Sampedro left her work at the Forsyth County Public Library. While Sampedro was stopped at a stop sign on her way home, Sampedro's vehicle was struck from behind by another vehicle. Sampedro exited her vehicle to talk to the driver of the other vehicle, whom she later identified as defendant. Defendant's cousin, Celeste Hines ("Hines"), sat in the front passenger seat of defendant's vehicle.

Defendant apologized for the accident and suggested that she and Sampedro move their vehicles to a side road, so as not to block traffic. After the two moved their vehicles, defendant suggested that she and Sampedro exchange their names, addresses, telephone numbers, and insurance information. Defendant then returned to her vehicle and began to write something down on an envelope while Sampedro turned to her vehicle and assessed its damage. Sampedro then attempted to retrieve defendant's contact information, but defendant handed the envelope to Hines and instead asked Sampedro for her contact information. After Sampedro provided defendant with her information, defendant suggested that Sampedro return to her vehicle

to ensure it started. Sampedro returned to her vehicle and started it, but then remembered that she never received defendant's contact information. The last thing Sampedro remembered before waking up in Forsyth Memorial Hospital's emergency room was checking her side mirror to ensure it was safe to get out of her vehicle and retrieve defendant's contact information.

Dr. C.J. Lepak ("Dr. Lepak") treated Sampedro at Forsyth Memorial Hospital's emergency room. Dr. Lepak testified that when Sampedro arrived, she had "blood coming down the right side of her face and into her right ear," and several abrasions and scratches on her body. Dr. Lepak later discovered that Sampedro had a broken clavicle and a "closed head injury." Dr. Lepak testified that Sampedro's head injury was consistent with someone beating Sampedro's head with a baseball bat, crowbar, baton, or a similar instrument. Dr. Lepak also testified that although Sampedro's abrasions and broken clavicle may have been caused by a fall, her head injuries were inconsistent with a fall. At the close of the State's evidence, defendant moved to dismiss the charges against her.

On direct examination, defendant testified that she intentionally ran into Sampedro's vehicle on the night of the accident, and that Hines "snatched [Sampedro's] pocketbook and I sped off." Defendant also testified that after she drove away, she looked in her rearview mirror and saw Sampedro lying on the ground. Defendant testified that she did not call for an ambulance. Instead, she drove to Wal-Mart and used Sampedro's credit cards for a "shopping spree."

During her direct examination, defendant admitted to her prior convictions for possession of cocaine, common law robbery, financial credit card fraud, and injury to personal property. Defendant testified that these convictions were the extent of her criminal record. However, on cross-examination, defendant admitted to a series of other convictions, including attempted common law robbery, financial card theft, multiple counts of misdemeanor larceny, and possession with the intent to make, sell, or deliver cocaine. Defendant was also questioned on cross-examination about the facts of her previous robbery convictions. At the end of these questions, defendant objected. The trial court sustained defendant's objection. However, defendant did not move to strike the relevant testimony.

At the close of defendant's evidence, defendant renewed her motion to dismiss the charges against her. The trial court again denied the motion. On 4 April 2002, the jury convicted defendant of

robbery with a dangerous weapon and aggravated assault on a handicapped person. At defendant's sentencing hearing, the trial court found as aggravating factors that defendant occupied a position of leadership or dominance in committing the offenses and that the victim was elderly. The trial court also found as a mitigating factor that defendant voluntarily acknowledged wrongdoing in connection with the offenses at an early stage of the criminal process. Defendant appeals.

---

The issues on appeal are whether the trial court erred (1) by allowing the State to cross-examine defendant regarding her prior convictions; (2) by denying defendant's motion to dismiss the robbery with a dangerous weapon charge; (3) by denying defendant's motion to dismiss the charge of aggravated assault on a handicapped person; and (4) in finding as an aggravating factor that defendant occupied a position of leadership in the commission of the offenses.

[1] Defendant first assigns error to the trial court permitting questions regarding her prior convictions. Defendant argues that the State's cross-examination of defendant was beyond the scope allowed under Rule 609(a). We disagree.

In *State v. Warren*, 327 N.C. 364, 395 S.E.2d 116 (1990), we stated:

> Generally, much latitude is given counsel on cross-examination to test matters related by a witness on direct examination. The scope of cross-examination is subject to two limitations: (1) the discretion of the trial court; and (2) the questions offered must be asked in good faith. Furthermore, the questions of the State on cross-examination are deemed proper unless the record discloses that the questions were asked in bad faith.

327 N.C. at 373, 395 S.E.2d at 121-22 (citations omitted). The trial judge "sees and hears the witnesses, knows the background of the case, and is in a favorable position to control the proper bounds of cross-examination." *State v. Edwards*, 305 N.C. 378, 381, 289 S.E.2d 360, 362-63 (1982). Therefore, since it is in the discretion of the trial judge to determine the limits of legitimate cross-examination, his rulings thereon are not prejudicial error absent a showing that the verdict was improperly influenced by the ruling. *Id.* at 381-82, 289 S.E.2d at 363.

Under Rule 609(a) of the North Carolina Rules of Evidence, the credibility of a witness can be attacked by evidence that the witness

was convicted of a felony. N.C. Gen. Stat. § 8C-1, Rule 609(a) (2003). However, during the guilt-innocence phase of a criminal trial, the use of prior felony convictions on cross-examination has been limited to the name, date, place, and punishment of the crime, unless the information is introduced to correct inaccuracies or misleading omissions in defendant's direct testimony. *State v. Lynch*, 334 N.C. 402, 410, 412, 432 S.E.2d 349, 353, 354 (1993). Thus, where a defendant "opens the door" by misstating his criminal record or the facts of crimes or actions, or where a defendant uses his criminal record to create inferences in his favor, the State is allowed to cross-examine the defendant about the details of those prior crimes or actions. *Id.* at 412, 432 S.E.2d at 354.

Defendant asserts that the trial court committed plain error by allowing the State to cross-examine defendant as follows:

STATE: . . . you used a gun the first time you robbed somebody, didn't you?

DEFENDANT: No.

STATE: You didn't confess to the police you used a gun the first time?

DEFENDANT: No.

STATE: You didn't tell the police you used a .22 gun the first time you robbed somebody?

DEFENDANT: No.

STATE: So they would be incorrect, is that right?

DEFENDANT: Must have to be because I never told anyone that.

STATE: But you're telling us the truth, right?

DEFENDANT: I'm saying that if they're saying that I said something I didn't, of course I'm telling the truth.

STATE: Ms. Singletary, back when you made your first robbery isn't it interesting that you also tried to limit your involvement in that crime as well, didn't you?

DEFENDANT: No.

STATE: Like you're doing right now, telling me you didn't have a gun the first time?

DEFENDANT: No, that's not true because from the first time that they had spoke to me about this crime I have told the truth. I never even went around it. I told them the truth since day one.

STATE: So if the detective back in your first robbery said that Singletary tried at first to limit her culpability by saying she was along for the ride and did not participate in the crimes, he wouldn't be telling the truth, would he?

DEFENDANT: Huh-uh.

DEFENSE COUNSEL: Objection, Your Honor.

THE COURT: Sustained.

Under plain error, this Court reviews the entire record and determines whether the alleged error is so fundamental and prejudicial that justice could not have been done. *State v. Haselden*, 357 N.C. 1, 13, 577 S.E.2d 594, 602, *cert. denied*, 124 S. Ct. 475 (2003); *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983). To prevail on plain error, defendant must not only convince this Court that there was error, she must also convince us that absent the error, the jury probably would have reached a different result. *Haselden*, 357 N.C. at 13, 577 S.E.2d at 602 (citations omitted).

We conclude that defendant has failed to meet this burden. The evidence presented at trial was overwhelmingly in favor of the State. Defendant testified that she intentionally ran into Sampedro's vehicle for the purpose of stealing her pocketbook. Defendant also testified that, with the help of Hines, she stole Sampedro's pocketbook and used Sampedro's credit cards. Defendant admitted that she used Sampedro's credit cards at various locations that evening and the following day because she knew that Sampedro would soon cancel the cards. Defendant further testified that while fleeing the scene, she saw Sampedro on the ground. Dr. Lepak testified that Sampedro suffered from head injuries consistent with trauma directed at the head by the use of a baseball bat, crowbar, baton, or similar instrument. Dr. Lepak opined that Sampedro's head injuries were not the result of a fall, but the result of someone hitting her with a foreign instrument. We conclude that the foregoing evidence would allow a reasonable jury to convict defendant of robbery with a dangerous weapon and aggravated assault on a handicapped person. Defendant has failed to convince this Court that, absent the cross-examination by the State, the jury would have reached a different result. Therefore, defendant's first assignment of error is overruled.

**[2]** Defendant next assigns error to the trial court's denial of defendant's motions to dismiss the charges against her. In ruling on a motion to dismiss made at the close of evidence, the trial court must determine whether the State has produced substantial evidence of each essential element of the offense charged. *State v. Roddey*, 110 N.C. App. 810, 812, 431 S.E.2d 245, 247 (1993). Whether the State's evidence is substantial is a question of law for the trial court. *State v. Lowe*, 154 N.C. App. 607, 609, 572 S.E.2d 850, 853 (2002). Substantial evidence is the amount of "relevant evidence necessary to persuade a rational juror to accept a conclusion." *State v. Kemmerlin*, 356 N.C. 446, 473, 573 S.E.2d 870, 889 (2002). The motion to dismiss must be denied if the evidence, viewed in the light most favorable to the State, would allow a jury to reasonably infer that the defendant is guilty. *State v. Williams*, 154 N.C. App. 176, 178, 571 S.E.2d 619, 620-21 (2002).

The essential elements of robbery with a dangerous weapon are (1) the possession, use or threatened use of a dangerous weapon; (2) threatening or endangering the life of a person; (3) while taking or attempting to take personal property; (4) from another or from a residence or any other place where there is a person in attendance, at any time, day or night; (5) or aiding or abetting others in the commission of such a crime. N.C. Gen. Stat. § 14-87(a) (2003).

Defendant argues that the State failed to produce sufficient evidence that defendant used a dangerous weapon in the robbery, and that therefore the charge of robbery with a dangerous weapon should have been dismissed. We disagree.

In the case *sub judice*, Sampedro testified that the last thing she remembered before waking up in Forsyth Memorial Hospital's emergency room was getting out of her vehicle to speak with defendant. Although no weapon was produced at trial, Dr. Lepak testified that Sampedro received head injuries consistent with the use of a foreign instrument against the back of Sampedro's head. Dr. Lepak further testified that, although Sampedro's other injuries were consistent with a fall, in his opinion her head injuries occurred before she fell to the curb. Viewing the evidence in the light most favorable to the State, we conclude that there was substantial evidence that defendant used a dangerous weapon to rob Sampedro. Therefore, we hold that the trial court did not err in denying defendant's motion to dismiss the charge of robbery with a dangerous weapon.

**[3]** Defendant also argues that the State failed to present sufficient evidence that defendant knew of Sampedro's handicap, and that therefore the charge of aggravated assault on a handicapped person should have been dismissed. We disagree.

North Carolina General Statute § 14-32.1(e) (2003) provides:

A person commits an aggravated assault or assault and battery upon a handicapped person if, in the course of the assault or assault and battery, that person:

(1) Uses a deadly weapon or other means of force likely to inflict serious injury or serious damage to a handicapped person; or

(2) Inflicts serious injury or serious damage to a handicapped person; or

(3) Intends to kill a handicapped person.

Although this statute does not specifically require that defendant know his victim is handicapped, defendant urges this Court to adopt such a requirement based on the pattern jury instructions. The pattern jury instructions for N.C. Gen. Stat. § 14-32.1(e) require the jury to find that defendant knew or had reasonable grounds to know the victim was a handicapped person. N.C.P.I.—Crim. 208.50A (2002). However, because there is no North Carolina case law previously applying this statute, this is a matter of first impression for this Court. As discussed herein, we conclude that in order to convict an individual under N.C. Gen. Stat. § 14-32.1(e), the jury must find that defendant knew or had reasonable grounds to know the victim was a handicapped person.

"Statutes should be construed to ensure that the purpose of the legislature is accomplished." *State v. Thompson*, 157 N.C. App. 638, 644, 580 S.E.2d 9, 13, *stay denied, disc. review denied*, 357 N.C. 469, 587 S.E.2d 72 (2003). In 1981, a study was presented to the Legislative Program of the Governor's Crime Commission in support of the enactment of N.C. Gen. Stat. § 14-32.1(e). The study recommended that the General Assembly enact legislation to require that judges consider the physical condition of the victim prior to passing sentences for felony convictions. "Very often one who is elderly or who is physically or mentally infirm is the prey of the criminal . . . some offenders may even 'lie in wait' for one whose frailties are obvious." An Agenda in Pursuit of Justice, p. 17. Thus, we believe that the

knowledge requirement is in keeping with the purpose and intent of the legislature in enacting N.C. Gen. Stat. § 14-32.1(e).

We derive further guidance on the issue from examination of N.C. Gen. Stat. § 14-34.2 (2003), which defines the charge of assault with a firearm on a law enforcement officer. Our courts have determined that a charge of assault with a firearm on a law enforcement officer requires that the State prove that the defendant knew or should have known that the victim was an officer performing his official duties. *See State v. Page*, 346 N.C. 689, 699, 488 S.E.2d 225, 232 (1997), *cert. denied*, 522 U.S. 1056 (1998); *State v. Avery*, 315 N.C. 1, 31, 337 S.E.2d 786, 803 (1985). The knowledge requirement has been imposed although the underlying statute is silent on the question of knowledge. N.C. Gen. Stat. § 14-34.2. Therefore, we likewise interpret N.C. Gen. Stat. § 14-32.1(e), assaults on a handicapped person, to require the State to prove that the defendant knew or should have known that the victim was handicapped.

In the case *sub judice*, Sampedro testified that she suffers from "profound sensory neural hearing loss," which requires her to wear a hearing aid. Sampedro showed the jury the hearing aid she wore on the evening in question. The hearing aid was an external piece Sampedro wore over her ear. Sampedro further testified that she wore the hearing aid on the evening of the accident, and that she had several conversations with defendant and repeatedly walked to and from defendant's car. We conclude that the foregoing evidence is sufficient to allow a reasonable juror to find that defendant knew or should have known of Sampedro's handicap. Therefore, we hold the trial court did not err in denying defendant's motion to dismiss the charge of aggravated assault against a handicapped person.

[4] Defendant last assigns error to the trial court finding as an aggravating factor that defendant occupied a position of leadership in the commission of the offenses. We note initially that this issue is not properly before this Court. Because defendant did not object to this alleged error at the sentencing hearing, she has waived her right to appellate review of the alleged error. N.C.R. App. P. 10(b)(1) (2004). Nevertheless, pursuant to Rule 2 of the North Carolina Rules of Appellate Procedure, we have elected to examine defendant's argument, and we conclude that it is without merit.

Under Structured Sentencing, the trial court may find as an aggravating factor that defendant occupied a position of leadership in the commission of the offense charged. N.C. Gen. Stat. § 15A-1340.16(d)(1) (2003). However, the State bears the burden of

proving by a preponderance of the evidence that the aggravating factor exists. N.C. Gen. Stat. § 15A-1340.16(a) (2003). Furthermore, "[t]he trial court's finding of an aggravating factor must be supported by 'sufficient evidence to allow a reasonable judge to find its existence by a preponderance of the evidence.' " *State v. Hughes*, 136 N.C. App. 92, 99, 524 S.E.2d 63, 67 (1999), *disc. review denied*, 351 N.C. 644, 543 S.E.2d 878 (2000) (quoting *State v. Hayes*, 102 N.C. App. 777, 781, 404 S.E.2d 12, 15 (1991)).

In the case *sub judice*, the State presented evidence that defendant was the driver of the vehicle that collided with Sampedro's vehicle, that defendant intended the collision, and that defendant was the only person to speak with Sampedro after the collision. The State also presented evidence that, in an attempt to facilitate the robbery, defendant suggested Sampedro return to her vehicle to ensure it started. Finally, the State presented evidence that defendant was driving when she and Hines fled the scene. Although defendant testified that it was Hines who stole Sampedro's pocketbook, the State's evidence tended to show that Hines' only participation in the actual robbery and assault was the taking of an envelope from defendant before defendant requested Sampedro's contact information. We conclude that the evidence before the trial court at the sentencing hearing was sufficient to allow the trial court to find by a preponderance of the evidence that defendant occupied a position of leadership in the commission of the offenses. Therefore, defendant's last assignment of error is overruled.

No error.

Judges WYNN and McCULLOUGH concur.